[No. 4167. Decided April 23, 1902.]

R. T. DANIEL, *Appellant,* v. GOLD HILL MINING COMPANY *et al., Respondents.*

FOREIGN LAWS — PRESUMPTIONS — LIABILITY OF CORPORATE STOCK TO EXECUTION.

Under the rule that the laws of a foreign state, when not pleaded, must be presumed to be the same as our own, no presumption can arise that the laws of British Columbia authorize the sale of the stock of a stockholder of a foreign corporation doing business in that province on an execution issued on a judgment there against such stockholder, since there is no law of this state authorizing execution sales of that character.

SAME — LICENSING FOREIGN CORPORATIONS TO DO BUSINESS.

Since the act of British Columbia authorizing foreign corporations to do business in that province contains no express declaration that such corporations, on complying with the act, shall become domestic corporations, the effect of the act is merely to license foreign corporations to do business in the province, and not to make them domestic corporations.

ESTOPPEL — ACQUIESCENCE IN VOID EXECUTION SALE.

The fact that defendants, whose shares of stock in a corporation of this state had been wrongfully sold on execution in British Columbia in partial satisfaction of a judgment there against them, paid the balance of the judgment, as shown after credit of the amount realized from the execution sale, would not constitute a ratification of the void sale, nor estop them from urging its invalidity.

Appeal from Superior Court, Spokane County.—Hon. Leander H. Prather, Judge. Affirmed.

*Samuel R. Stern,* for appellant.

*P. F. Quinn,* for respondents.

The opinion of the court was delivered by

White, J.—The amended complaint in this action, omitting title and jurat, is as follows:

"Plaintiff, by this his first amended complaint, alleges:

"1.    That at all the times herein mentioned he was, and still is, a resident of the city of Spokane, Washington, and that the defendant Gold Hill Mining Company was, and still is, a duly incorporated mining company, organized and existing under the laws of the state of Washington, having filed its articles of incorporation in the county auditor's office of Spokane county on October 2, 1895.  [And that, among the objects of said corporation was the transaction of a general mining business, such as locating, acquiring, procuring, holding, buying, selling, leasing, and operating mining properties in the province of British Columbia,] and that its capital stock was five hundred thousand shares, of the par value of one dollar ($1) each.

"2.    That the defendant John T. Sullivan is the present acting and duly qualified secretary of said mining company, and has charge of the books, papers, stock-books, seal, and other property of said mining company, contained in the office of said company, at Spokane, Washington.

"3.    That the other defendants above named, to-wit, John T. Sullivan, Michael Doneen, E. J. Dyer, George

Comegys, Fred C. Davidson, Edward Welch, and E. J. Doneen, are stockholders and trustees of the said mining company, and are all residents of the city of Spokane.

"[4.    That the said Gold Hill Mining Company has, since its incorporation, acquired certain mining properties in the Province of British Columbia, and has prosecuted all its actual business within said province, being a corporation of the state of Washington for convenience only,] and because it was organized by residents of the state of Washington, who are its chief stockholders.

"[5.    That in order to prosecute its business within the Province of British Columbia, the said mining company was required by the statutes of the said Province of British Columbia to, and did in accordance with the provisions of said statutes, maintain an office within the said province, to-wit, at Rossland, B. C., and designated an agent, to-wit, J. A. McDonald, of Rossland, B. C., all in pursuance of Section 140, Chapter 44, of the Revised Statutes of British Columbia; and a copy of said Act is hereto annexed, and made part hereof.]

"[6.    That the only property owned or acquired by the said mining company was known as the 'Gold Hill mineral claim,' and situated within a few miles of the said city of Rossland, B. C.]

"[7.    That the defendants above named, other than the Gold Hill Mining Company and John T. Sullivan, were trustees of the said Gold Hill Mining Company, and while acting as such trustees did, as this plaintiff had reason to believe, conspire, for the purpose of defrauding plaintiff and other stockholders of the said Gold Hill Mining Company, to sell said Gold Hill Mineral Claim at an inadequate price; and, in order to prevent the perpetration of said fraud, this plaintiff brought an action in the supreme court of British Columbia against the Gold Hill Mining Company and all of the above defendants, except the defendant Sullivan, by serving process upon the said McDonald, as agent aforesaid, then empowered to accept service, and also by publication of summons; and that, thereafter, the defendants in that action appeared by their

counsel, Messrs. Bowes & Senkler, and contested the said suit, and the same proceeded to trial upon the personal appearance of said defendants, and by their said attorney;] and that, on September 18, 1897, this plaintiff procured a judgment against said defendants, [declaring the purported conveyance of the said Gold Hill mineral claim to the defendant Edward Doneen to be null and void and in fraud of this plaintiff and other stockholders,] and for costs against said defendants, and that, thereafter, said defendants, by their said attorneys, prosecuted an appeal from said decision, which said appeal, coming on to be heard at Victoria, in the Province of British Columbia, was dismissed, and judgment rendered for this plaintiff against said defendants, on February 10, 1899, for the sum of $376.29, and of all which said defendants herein had due and personal notice; that, upon the said judgment, an execution was duly issued to the sheriff of South Kootenay, B. C., and as required by the statutes of British Columbia; and said sheriff thereafter, [to the personal knowledge of said defendants,] sold all the right, title, and interest of the defendants E. J. Doneen, Michael Doneen, F. C. Davidson, Edward Welch, and E. J. Dyer to their respective shares of the capital stock of the said Gold Hill Mining Company, and amounting in all to the sum of 211,500 shares, as follows:

| Certificate No. | Defendant from whom seized. | No. of shares. |
|---|---|---|
| 65 | E. J. Doneen | 1,000 |
| 101 | "      " | 10,000 |
| 102 | "      " | 30,000 |
| 103 | "      " | 5,000 |
| 104 | "   .   " | 2,500 |
| 105 | "      " | 1,500 |
| 107 | "      " | 500 |
| 109 | "      " | 35,000 |
| 112 | "      " | 50,000 |
| 115 | "      " | 400 |
| 87 | Michael Doneen | 50,000 |

| 18 | F. C. Davidson | 10,000 |
| 19 | "      " | 10,000 |
| 111 | "      " | 5,000 |
| 114 | Edward Welch | 100 |
| 30 | E. J. Dyer | 500 |

Total .................$211,500

"That, before selling said shares of stock, the said sheriff, as required by the laws of the said Province of British Columbia, [and in absence of any special provision of the law of the state of Washington respecting the sale of stock under execution, caused notice to be served upon the said Gold Hill Mining Company, hereinbefore referred to, and as provided by the said laws of the said Province of British Columbia, which said notice contained all the facts showing the procurement of the said judgment, the issuance of said execution, the interest of each of said defendants and the number of shares owned by each, and that said shares were to be sold at public auction , as provided by the laws of the Province of British Columbia, on April 28, A. D. 1899, at the hour of 11o'clock in the forenoon, and of the terms and conditions of said sale, and a copy of the published notice of sale is hereto attached, and made a part hereof. And that a copy of said notice was published in the Rossland Miner in the manner and for the times prescribed by the statutes of said British Columbia; and that, in addition thereto, such notice was given to said Gold Hill Mining Company as is provided by the statutes of the state of Washington relative to the attachment of stock in such corporation, and by service upon the secretary of said company, and all for the purpose of giving full and ample notice to the said defendants, and to the said mining company, and its officers, of the sale of the said respective shares of stock owned by said defendants, and as provided by law.]

"8.   That said sale took place at public auction, after due advertisement, as provided by the laws, statutes, and customs of British Columbia, and that the plaintiff, being the highest bidder therefor, at the sum of one hundred and

five dollars ($105.00), lawful money of Canada, did then and there become the purchaser of the said interest of all of said defendants, and of the said shares of stock owned by them, respectively, and that, in accordance with the said sale, and purchase by this plaintiff, and under and pursuant to the powers vested in the said sheriff by the 'Execution Act,' said sheriff did transfer and assign to the plaintiff all the right, title, and interest of the said defendants above named, excepting the said Gold Hill Mining Company and John T. Sullivan, in and to the said 211,500 shares of said stock as aforesaid, and plaintiff then became, and still is, the owner of said shares of stock, and of the interest of the said defendants therein, and entitled to a certificate representing the said 211,500 shares, and to be recognized upon the books of said Gold Hill Mining Company as the owner of the said shares of stock.

"9. That the said defendants having failed and neglected to pay the balance due upon said judgment, this plaintiff, on January 12, 1899, commenced an action against said defendants in the superior court of Spokane county, which said action was known as No. 13,831 of the filing numbers of causes on file in the clerk's office of Spokane county, and that the said defendants appeared in said action by Jones, Belt & Quinn, their attorneys, [but, recognizing their liability, and that there was no defense, except partial payment, before a trial of the issues therein had been had, said defendants offered to pay, and did pay, the amount due on said judgment, after being credited the sum of one hundred and five dollars ($105) paid by the plaintiff herein upon the sale of his said execution, less the expenses of said sale, amounting to sixty-one dollars and thirty-five cents ($61.35), leaving a credit to be given upon said judgment of forty three dollars and sixty five cents ($43.65), as hereinbefore alleged; and that said defendants were fully aware of the fact that said judgment had been obtained in the Province of British Columbia, that execution had been issued thereon, that the sale was to be made and was made on the said execution at the time and in the manner hereinbefore alleged, and that said judgment was

in all respects regular and legal, and insisted that, as plaintiff had acquired said stock, he should give credit to said defendants, and asked for and received a credit for the same, and thus deprived this plaintiff of the right to collect the same within the state of Washington, or elsewhere, where property of said defendants might be found, by receiving and taking credit for the said sum with full knowledge of said facts, as hereinbefore alleged; and also knowing that the said plaintiff would thereby acquire title to the said shares of stock hereinbefore referred to.]

"10.   The plaintiff further alleges that, prior to the commencement of this action, he made a demand upon the defendant, John T. Sullivan, as secretary of said Gold Hill Mining Company, and who, as plaintiff alleges, is the only representative of said company residing in Spokane, Washington, and having charge of the books, stock books, seal, transfer books, and other personal property of the said mining company, but that the said Sullivan refused, and continues to refuse, to issue to this plaintiff a certificate showing his ownership of the said shares of stock, or to transfer the certificates of said defendants hereinbefore fully set forth, and has also refused, and continues to refuse, to enroll this plaintiff as a stockholder in said company, so that he may have the privileges of a stockholder under and by virtue of his said ownership of the said interest and shares hereinbefore fully set forth.

"Wherefore, plaintiff demands judgment:—1st.   That the defendants herein, and each of them, be compelled to recognize this plaintiff as the owner, and entitled to the possession of, the shares of stock formerly owned and held by the defendants Michael Doneen, E. J. Dyer, George Comegys, Fred C. Davidson, Edward Welch, and E. J. Doneen, as set out in paragraph seven hereof.   2d.   That the said certificates owned by the said defendants last named be transferred upon the books of the company to this plaintiff, and that said certificates be duly indorsed over to this plaintiff by said defendants.   3d.   That, upon their failure so to do, the said John T. Sullivan, as such secretary, be authorized and directed to issue to this

plaintiff a certificate of stock covering the interests of the said defendants in and to the shares owned by them, respectively, at the time of the said sale. 4th. That the said secretary be further compelled to enroll this plaintiff as a stockholder upon the books of said defendant Gold Hill Mining Company, and that he be entitled to all the rights and privileges of such stockholder, as the owner and holder of the shares and interests of the said defendants last above named. 5th. And that this plaintiff have such other and additional relief as to the court may seem proper, besides the costs of this action."

To this complaint a motion was directed to strike certain allegations as immaterial, which motion was sustained. The allegations stricken are embraced in brackets. The complaint with the allegations thus stricken was demurred to on the grounds that it did not state facts sufficient to constitute a cause of action, and that there was no equity in the bill, and the demurrer was sustained. The act of British Columbia pleaded in the complaint is, in part, as follows:

"Any company or association which has been or shall hereafter be incorporated in any foreign state or country for the purpose of carrying on any business that has for its object the acquisition of gain, and permitted by its charter and act of incorporation, and articles of association, to operate in the Province of British Columbia, may register itself and the members thereof under this Act, by depositing for registration with the Registrar of Joint Stock Companies of this province, or other officer for the time being holding that office, a copy of its Act, certificate and charter of incorporation, and articles of association, certified as being a true copy of the same under the hand of the officer of such foreign state or country with whom the same is registered and deposited, and having his official seal (if any) attached thereto, and also the written petition of the president and secretary of the said company, signed by them as such, and having attached thereto the corporate seal of the said company, and acknowledged by such presi-

dent and secretary before a notary public of such foreign state or country, praying for registration of the said company under this Act; and thereupon the said Registrar, or other officer holding that office for the time being in this province, shall issue his certificate of registration, and thenceforth the said foreign company shall be known in this province by its corporate name, with the addition thereto of the word 'foreign.'

"The Registrar of Joint Stock Companies shall issue a certificate of registration, showing the corporate name of the company, the place where the head office of the company is situated, the objects for which the company has been established, the amount of the capital of the company, and the number of shares into which the same is divided, and the amount of each share; and such certificate shall be published for one month in the British Columbia Gazette, and in one newspaper circulating in the district wherein the company purpose to carry on business at the expense of the company; and such certificate shall be conclusive evidence that all the requirements of this Act have been complied with.

"Any such foreign company may sue and be sued in its corporate name, and, if authorized so to do by its Act, charter, certificate of incorporation, or memorandum of association, may acquire and hold lands in British Columbia by gift, purchase, or as mortgagees or otherwise, as fully and freely as private individuals, and may sell, lease, mortgage, or otherwise alienate the same, and may locate, procure, hold, buy, sell, and operate mineral claims pursuant to the provisions of the 'Mineral Act,' or any amendments thereto that may hereafter be made, and may carry on the business of milling, smelting, reducing, and working its ores, or of obtaining from ores all that they may contain by means of any process, and of purchasing ores for that purpose, and generally may have all the rights, powers and privileges of a company incorporated under the laws of the Province of British Columbia, not inconsistent with its Act, charter, certificate of incorporation, or memorandum of association.

"Every company registered under this Act shall have a registered office in the Province of British Columbia, to which all communications and notices may be addressed, and shall also register the name and address of its agent or manager in the Province of British Columbia. If any company under this Act carries on business without registering such an office and its agent's or manager's name and address, it shall incur a penalty not exceeding five dollars for every day during which business is so carried on.

"Notice of the situation of such registered office and the name of its agent or manager, and of any change therein, shall be given to the Registrar of Joint Stock Companies of this Province, or other officer for the time being holding that office, and recorded by him. Until such notice is given, the company or association shall not be deemed to have complied with the provisions of this Act, with respect to having a registered office and agent or manager.

"In case of any action or suit, or other proceeding at law or in equity, being commenced by any company or association registered under this Act, against any person or persons, corporation or corporations, residing or carrying on business in the Province of British Columbia, such company shall furnish security for costs, if demanded. . . .

"Every foreign mining company registered under this part shall take out annually a miner's license in the following form; but a company registered under this part, its members or shareholders, shall not be entitled to take out a free miner's certificate, as provided by the 'Mineral Act,' for the purposes of the company:— . . .

"In this part the word 'company' shall be construed to mean a foreign corporation or joint stock company carrying on, or which has ceased to carry on, business in British Columbia. . . .

"Any writ or summons, plaint, injunction, or other legal proceeding duly issued, at the instance or suit of any person, by any competent court of the province, or officer of such court, may be served as against the company, by delivering the same at Victoria, to the Registrar of the supreme court.

"It shall be the duty of such registrar to cause to be inserted in the four regular issues of the British Columbia Gazette consecutively following the delivery of such process to him, a full copy of such process with a memorandum of the date of delivery, and the advertisement may be in the form in Schedule A to this Act; *Provided,* that when the proceeding shall be a bill of complaint, it shall be sufficient, instead of setting out a full copy thereof in the advertisement, to state generally the nature of the relief sought by such bill of complaint, and to state the time limited and the place mentioned, for entering an appearance.

"After such advertisement shall have appeared in such four issues, the delivery of such process to the Registrar as aforesaid, shall be deemed at law and in equity, as against the company, to be good and valid service of such process.

.  .  .

"Provided, always, that the company may provide an office in some place in British Columbia to be approved of by the Registrar of Joint Stock Companies, in which case the company shall deposit with such Registrar a certificate, under the seal of the company, stating the full name of the company and the exact locality of such office, and that legal process against the company may be effectually served upon the company by leaving the process at the office; and a fee of two dollars and a half shall be payable to such registrar for his own use on the filing of such certificate.

"In case a company shall avail itself of the provisions of the preceding section of this Act, and shall keep, or cause to be kept, open such office from ten o'clock in the forenoon to one o'clock in the afternoon on all week days, legal public holidays excepted, and shall affix, and cause to be kept affixed, to such office, in some conspicuous place, a sign, having imprinted upon it in fair and legible letters the full name of the company, then sections 88, 89, 90 and 91 of this Act shall not apply to such company, and service of legal process on the company by leaving the same at such office during the hours named, shall, as against the company, be deemed good and valid service to all intents and purposes whatsoever.

"In entering up a judgment by default, or for the purpose of taking any proceeding consequent or following on such service, as in the preceding section is mentioned, it shall be sufficient, so far as such service is concerned, to state in the affidavit of service that the process was served on the company by leaving the same at the registered office of the company between the hours aforesaid.

"In any action, suit, or proceeding against a company, it shall not be necessary to aver in any pleading, or to adduce any evidence that the company was organized or incorporated under the laws of any foreign state or jurisdiction, or that the company had power under its organization or incorporation to make the contract or incur the liability in respect of which the action, suit, or proceeding against the company shall be brought.

"Nothing in this part contained shall be deemed to limit, abridge, or take away any legal right, course, or remedy against a company not therein enacted or recognized, nor to absolve or lessen any obligation, rule or duty imposed by law on a company."

The question for our determination is, does the amended complaint, with or without the stricken matter, contain allegations sufficient, in this state, to entitle the appellant to the relief demanded by the complaint? Is the appellant the owner of the stock described in the pleadings? The contention of the appellant is that the respondent corporation, by virtue of having complied with the act of British Columbia heretofore quoted, became to all intents and purposes a domestic corporation of British Columbia, and that, by reason of such fact, the appellant had a lawful right to sell the stock of the stockholders of the corporation under execution issued in British Columbia on the judgment described in the complaint. The appellant has not pleaded any law of the Province of British Columbia authorizing a sale on execution of the stock of the stockholders of a foreign corporation registered under such act. We have no

law in this state authorizing the sale of the stock of the stockholders of a *foreign* corporation doing business in this state on an execution issued on a judgment in this state against the stockholders of such foreign corporation, and we cannot, therefore, presume that any law on the subject exists in British Columbia, under the rule that the laws of a foreign state will be presumed to be the same as our laws. The presumption must be that there is no law on the subject. *Dormitzer v. German Savings & Loan Society,* 23 Wash. 132 (62 Pac. 862).

The stock in *domestic* corporations way be seized under execution. The statute provides that the writ of execution shall be levied in like manner and with like effect as similar property is attached. § 5269, Bal. Code. Stocks or shares, or interest in stock or shares, of any corporation, etc., is attached by leaving with the president or other head of the same, or the secretary, cashier, or managing agent thereof, a copy of the writ, and a notice stating that the stock or interest of the defendant is attached in pursuance of such writ. § 5362, Bal. We think the act of British Columbia referred to and pleaded in the complaint relates only to foreign corporations, and that a foreign corporation availing itself of the provisions of the act did not thereby become a *domestic* corporation of British Columbia. The effect of the act cited was merely to license foreign corporations to do business in British Columbia. It did not create the foreign corporation a domestic corporation.

"If the effect of the legislation be to license a foreign corporation to do business in the state, it does not become a corporation of that state, but is suable there as any other non-resident 'found within the district' would be, under the acts of congress regulating jurisdiction. But if the effect be to create a corporation by adopting one chartered in another state, its *status* is the same as if it had been origin-

ally and solely incorporated by the state adopting it."
*Uphoff v. Chicago, etc., R. Co.,* 5 Fed. 545.

The above quotation we think correctly expresses the
law, and it is sustained by the authorities. An examina-
tion of the act discloses that there is no express declaration
that the foreign corporation, on complying with the act,
shall become a domestic corporation. That it was not to
be on the same plano as a domestic corporation is further
borne out by the provisions that, in addition to its corporate
name, it shall be designated "foreign," and that it shall fur-
nish security for costs, if demanded, in all suits brought by
it. It is to have a registered office, to which all communica-
tions may be addressed. It is not required, however, to
register the names of its stockholders; only the name of its
agent or manager. The act further provides that the com-
pany may have an office where process may be served on the
company. If it does not provide such an office, process is
served by publication, as provided in the act. The act,
wherever speaking of the corporation, calls it a "foreign
corporation." The act is similar and of the same class as
§§ 4291 to 4302, Bal. Code, authorizing foreign corpora-
tions to do business in this state.

The appellant relies upon the case of *Young v. South
Tredegar Iron Co.,* 85 Tenn. 189 (2 S. W. 202, 4 Am. St.
Rep. 752), as fully sustaining his position. We entirely
agree with the appellant that the case is a splendidly con-
sidered one, but we cannot agree with him that the law of
Tennessee, under which the decision was rendered, is sim-
ilar to the law of British Columbia now being considered.
The following quotation from the Tennessee decision shows
the distinction:

"Has the Legislature of Tennessee determined upon
what terms and to what extent a foreign corporation may
exercise its powers in Tennessee? What is the status of the

defendant corporation under the policy and legislation of this state? The act of 1877, Chapter 31, carried into Code of Milliken & Vertrees as Sections 1992 to 2003, inclusive, provides in substance, that every corporation created by the laws of any other state for the purpose of engaging in the business of manufacturing metal, timber, cotton, or wool, or mining ore or coal, desiring to carry on business in this state, must first file with the Secretary of state a copy of its charter, and cause an abstract of same to be registered in the county in which it proposes to engage in business. By a subsequent section it is expressly declared that 'such corporations shall be deemed and taken to be corporations of this state, and shall be subject to the jurisdiction of the courts of this state, and may sue and be sued therein in the mode and manner that is or may be by law directed in the case of corporations created or organized under the laws of this state.' We do not think that a foreign corporation of the character defined in this act, they being mining and manufacturing corporations, are authorized to carry on business in this state, except upon compliance with this act and upon the terms of this act. It is not, in our judgment, optional with such corporations as to whether they will or will not become domestic corporations, as required by this act. Several reasons of public policy, in view of the rapid increase in the number of corporations, and the vast amount of wealth engaged in corporate business demanded legislative regulation as to the terms upon which corporations of other states should be suffered to carry on business within this state. The legislation by which corporations of other states are made corporations of this state is clearly within the legislative power."

The Tennessee decision is based upon the express provision of the statute, which declares that such corporations shall be deemed and taken to be corporations of the state, and that it is within the power of the legislature, if it sees fit so to do, to make, by legislative declarations, corporations of other states its corporations.

Stock in a corporation cannot be seized on execution and sold unless authorized by an express statute, and, where such sale is authorized, the authority extends only to the stock of corporations existing in that state, and not to that of corporations in other states.   Drake, Attachment (7th ed.), § 244, and cases cited.   No law of British Columbia has been pleaded by the plaintiff, authorizing the sale of the stock by the sheriff of South Kootenay district. A party basing his right on a foreign law must plead it.  .Bliss, Code Pleading (3d ed.), § 183.   We have no law authorizing the sale of the stock of a foreign corporation, and hence there can be no presumption that the Province of British Columbia has such a law.   The attempted sale by the sheriff of South Kootenay, so far as disclosed by the record, was without authority of law and void, and no title to the stock passed to the purchaser under such sale.

The appellant's claim of estoppel is without merit.   It is elementary that the maxim of *caveat emptor* prevails at execution sales.

"It is the duty of the purchaser to satisfy himself, prior to the purchase, respecting the title of the defendant, and the sufficiency of the proceedings to transfer it, for the maxim of *caveat emptor* is unquestionably applicable both to judicial and to execution sales."   3 Freeman, Executions (3d ed.), § 335.

Bigelow on Estoppel (5th ed.), p. 570, lays down the rule that, to create an estoppel by conduct, the following elements must be present:   "(1)  There must have been a false representation or a concealment of material facts. (2) The representation must have been  made  with  knowledge, actual or virtual, of the facts.   (3)  The party to whom it was made must have been ignorant, actually and permissibly of the truth of the matter.   (4)  It must have

been made with the intention, actual or virtual, that the other party should act upon it. (5) The other party must have been induced to act upon it." It appears from the complaint that every one of these elements is absent, and the conduct of the respondents in no way led to the sale or induced the purchase of the stock by the appellant.

The fact that the appellant credited on the British Columbia judgment the amount the stock was sold for by the sheriff of Kootenay county, less costs, and afterwards brought suit for the balance in this state, and this balance, before issue joined, was paid by the respondents, does not amount to a ratification of the sale. The credit was a voluntary relinquishment by the appellant of the amount of the credit. The respondents, by paying the balance sued for in this state to prevent a judgment against them here, should not be held to have voluntarily accepted the amount which the appellant, on his own motion, credited on the claim sued for. There was no obligation, legal or moral, that required the respondents to appear in the action in this state on the British Columbia judgment, and plead that the appellant had not sued for all that was due him. Notwithstanding the credit, the respondents may, if demand is made upon them for the balance, pay it. The amended complaint avers nothing to the contrary. We think that the mere silence or acquiescence on the part of the respondents in the void sale of the stock, unattended with any affirmative act on their part as to the credit given on the judgment for the proceeds under such void sale, did not ratify the void sale, or estop the respondents from urging its invalidity. No act of the respondents put the appellant in a different position after the sale from that he was in before it. *Moody's Heirs v. Moeller,* 72 Tex. 635 (13 Am. St. Rep. 839); 3 Freeman, Executions (3d ed.), § 351a.

Whether the court properly or improperly struck from

the amended complaint all that part of paragraph 9 embraced in the brackets is not material. That portion of it which properly alleged facts, positively and not argumentatively or as conclusions of law, does not aid the appellant in his contention.

The judgment of the court below is affirmed, with costs to respondents.

·REAVIS, C. J., and ·DUNBAR, HADLEY, FULLERTON and ANDERS, JJ., concur.