[No. 11212. Department Two. December 5, 1913.]

FRANCES E. PECK, *Respondent*, v. HEMAN EVERETT PECK
*et al., Appellants.*[1]

WILLS—DEVISES—DISTRIBUTIVE OR INDIVIDUAL DEVISE—CONSTRUC-
TION. A devise to "my son H. E. P. and to his sons" Frank, Roy and
Ora, of a two-thirds interest in certain realty, to be divided equally
share and share alike, is not a gift to them collectively as a class
which would survive unimpaired to the others in case of the death
of one of them, but is a specific gift to each individually, and upon
the death of one prior to the death of the testator, the same would
lapse and fall into the residuum; in view of the rule that a gift to a
class is to a number uncertain at the time of the gift, and the rule
that a gift to persons indicated by name is *prima facie* a distributive
gift and not a gift to a class.

SAME—INTENTION—EVIDENCE—SUFFICIENCY. In such a case no in-
tention to make a distributive gift can arise from the fact that a
one-third interest was devised to the widow, dividing the subject
of the gift into two parts, where there was no provision for sur-
vivorship, and another clause gave the widow the residuum of the
estate.

EXECUTORS AND ADMINISTRATORS—NONINTERVENTION WILL—DISTRI-
BUTION OF ESTATE—BY ACT OF PARTIES—EVIDENCE—SUFFICIENCY. Un-
der a nonintervention will, which made the widow executrix, and
devised one-third of certain real estate to her, and two-thirds
thereof to other named devisees in equal shares, the interest of
one of whom lapsed by his death prior to the death of the testator,
and fell to the widow under the residuary clause, making her the
owner of half of the property, there is no distribution of the es-
tate, one-third to her, and two-thirds to the other three devisees, by
reason of the fact that she joined with them in a lease which pro-
vided that one-third of the rent be paid to her and two-thirds to the
other devisees; nor by reason of the fact that she, by making an
affidavit that the debts of the estate had been paid, facilitated the
making of a loan by the other devisees, secured by a mortgage upon
a two-thirds interest in the property, where she consented to the
lease on account of importunities to her for money, and insisted on
her ownership of a half interest, and where she denied knowledge
of the contents of the mortgage given.

SAME—ESTOPPEL. In such a case, the widow is not estopped to
claim her interest in the estate, where she derived no benefit and

[1]Reported in 137 Pac. 137.

the other devisees suffered no detriment from the circumstances which they claimed amounted to a distribution of the estate.

QUIETING TITLE—RIGHT OF ACTION—WILL AS MUNIMENT OF TITLE. An action to quiet title to a distributive portion of an estate, under a nonintervention will lies in favor of the residuary legatee, where the will is invoked as a muniment of title and the title depends upon a construction of the will.

APPEAL—NOTICE OF APPEAL—TIME TO JOIN IN APPEAL. On appeal by part of the defendants, a codefendant whose interests are traceable to the title claimed by the appellants, and who is similarly affected by the decree, must join in the appeal or serve an independent notice, within ten days after notice of appeal is given, as required by Rem. & Bal. Code, § 1720, and his independent appeal thereafter is too late.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered January 3, 1913, in favor of the plaintiff, in an action to quiet title, after a trial on the merits. Affirmed.

*A. G. Gray* and *John M. Gleeson*, for appellants Peck.

*Tolman & King*, for appellants Howard.

*A. E. Gallagher*, for respondent.

ELLIS, J.—This action was brought by Frances E. Peck to remove a cloud from the title to a one-half interest in certain real estate, in the city of Spokane, which she claims under the will of her deceased husband, and of which one-third, or one-sixth of the entire property, is claimed by the defendants Heman Everett Peck, Roy Peck and Margaret Peck by virtue of the same will. The following facts are not disputed: The plaintiff was the wife of one O. O. Peck at the time of his death, and for many years prior thereto. She was his second wife. By his first wife, O. O. Peck had one son, the defendant Heman Everett Peck. This son had three sons, Frank Peck, Roy Peck and Ora Peck. The property here in question was the separate property of O. O. Peck, acquired by him between the time of the death of his first wife and his marriage with the plaintiff. In 1902, O. O. Peck

made a nonintervention will, of which the following clauses are pertinent to the issues here involved:

"Second: I give, bequeath and devise to my wife, Frances E. Peck, one undivided one-third (1-3) interest in and to all that certain piece or parcel of land situate on Howard street in said city and county, and occupied by the building commonly known as 'Peck Building,' and more particularly described as follows, to-wit: . . . [No question being presented as to the particular description, we omit it.]

"Third: I give, devise and bequeath to my son, Heman Everett Peck, and to his sons, Frank Peck, Roy Peck and Ora Peck, the remaining undivided two-thirds (2-3) interest in and to the above described real estate to be divided equally between them share and share alike; provided, however, this clause of my will shall not take effect and be operative until the expiration of five (5) years from the date of my death, and provided further, and I hereby direct, that my said wife, Frances E. Peck, shall take possession of the whole of said above described real estate, and collect all the rents, issues and profits thereof until the end of said five (5) years, and out of the said rents, issues and profits, to pay all the taxes and other necessary expenses of preserving and protecting said property and after paying said taxes and expenses to pay my son, Heman E. Peck, the sum of Twenty-five Dollars ($25) per month during said period of five years, and the balance of said rents, issues and profits to herself as, and in lieu of any and all other compensation for managing said real estate and collecting the rents, issues and profits thereof and paying said taxes and expenses and commissions as executrix of this, my last will and testament.

"Fifth: I give, bequeath and devise to by wife, Frances E. Peck, all the rest and residue of my estate, real, personal and mixed.

"Lastly: I do hereby nominate and appoint my wife, Frances E. Peck, executrix of this, my last will and testament, and I do hereby revoke all former wills made by me, and I hereby direct that my said executrix shall not be required to enter any bond, and that my estate shall be settled in the manner herein provided, by my executrix, and that letters testamentary or of administration shall not be required."

After this will was made, and some time prior to the death of the testator, Ora Peck died, a minor, unmarried, intestate and without issue. The testator died on June 28, 1906, and Frances E. Peck, the plaintiff, qualified as executrix, filed an inventory, caused an appraisement of the estate to be made, and procured an order of the superior court in probate, declaring the estate solvent, and authorizing her to administer and settle the estate in accordance with the terms of the will and without the intervention of the court. Some time after the death of the testator, Frank Peck died, leaving as his sole heir his widow, the defendant Margaret Peck. After the testator's death and prior to August, 1910, the defendants Peck had made mortgages upon their interest in the property in question, apparently without designating the extent of that interest, to the plaintiff and also to certain other persons. On August 19, 1910, a loan was made to the defendants Peck for the purpose of taking up these mortgages, by the defendants Howard, which loan was secured by a mortgage on the undivided two-thirds interest in the property now claimed by the defendants Peck. On February 17, 1911, the plaintiff and defendants Peck joined in a five-year lease of the entire premises in question to the Combination Club Cafe, which lease contained the following provision: "One-third of each and every month's rent to be paid to Frances E. Peck; the remaining two-thirds of each and every month's rent to be paid to Everett H. Peck, the lessors." Other facts upon which there was a conflict in the evidence will be noticed in the course of the discussion.

At the conclusion of the evidence, the court declined to make any findings of fact or conclusions of law, but entered a decree adjudging the plaintiff to be the owner in fee simple of an undivided one-half interest in the property, free from any interest or lien of any of the defendants, and quieting her title thereto and awarding her costs. The defendants appeal.

We find it unnecessary to set out or review the voluminous pleadings further than to say that they are sufficient to

raise the following questions, the answers to which must be determinative of the case: (1) Was the devise of the two-thirds interest, to be divided equally, share and share alike, between Heman Everett Peck and his sons, Frank, Roy and Ora, a gift to individuals as tenants in common, which lapsed as to the share of Ora upon his death before the testator's demise, or was it a gift to a class composed of the persons named which survived unimpaired to the others of that class on the death of Ora Peck prior to the death of the testator? (2) Was there such a distribution of the estate prior to the commencement of this suit in accordance with either of these views as to be binding upon the parties to this action? (3) Has the respondent estopped herself to assert any claim to more than the one-third of the real estate in question? (4) Has the respondent mistaken her remedy?

I.  The appellants earnestly insist that the devise to the testator's son, Heman E. Peck, and to his sons, Frank Peck, Roy Peck and Ora Peck, of the undivided two-thirds interest in the real estate in question, to be divided equally between them, share and share alike, was a gift to these persons collectively as a class, and that those of the class who survived the testator took the share which would have gone to the testator's grandson Ora, had he outlived the testator. The respondent is equally insistent that the devise was of a specific interest to each of the persons named, as an individual, and that, on the death of Ora Peck, the devise to him lapsed, and the interest intended for him fell into the residuum and passed to the respondent under the fifth clause of the will.

It is, of course, a rule to which there can be no dissent that, in construing a will, the dominant intention of the testator, as manifested in his will, must, if lawful, be given effect; but the intention which controls is that which is positive and direct, not that which is merely negative or inferential. *Bill v. Payne*, 62 Conn. 140, 25 Atl. 354. It is only where the terms of the will are ambiguous and the intention left in doubt that a resort may be had to adventitious circumstances to deter-

mine that intention.    Such circumstances can never be invoked to create an ambiguity not apparent in the will itself, nor necessarily arising when it is sought to apply the terms of the will to the subject-matter or to the beneficiaries.    The duty of the court is ended when it has determined by the well settled rules of interpretation what the testator actually intended by the language which he has used.    If that intention is valid, it must be carried out.    *Herzog v. Title Guarantee & Trust Co.*, 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146.

Whether a devise is intended as a gift to a class collectively or to individuals distributively as tenants in common must, of course, primarily be determined by the language employed in the particular devise.    If there is any doubt as to the intention there expressed, resort must be had to other provisions of the will, and if there is still a doubt, aid may sometimes be found in the situation and relation of the persons interested and in the circumstances of the estate.    Owing to the almost infinite variety of language which may be used in wills, it is obviously impossible to lay down any invariable rule for determining the intention.    Courts will not permit themselves to be enslaved by mere technical rules of construction, but there are certain broad canons of interpretation which have become so thoroughly established by judicial announcement that they may be said to have passed into the body of substantive, or at least definitive, law upon the subject, which the courts will not capriciously disregard.

As defining a gift to a class, no rule has been more frequently announced, nor more universally adhered to, than the following:

"In legal contemplation, a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number." *In re Kimberly's Estate*, 150 N. Y. 90, 44 N. E. 945.

"A number of persons are popularly said to form a class when they can be designated by some general name, as 'children,' 'grandchildren,' 'nephews'; but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." 1 Jarman, Wills (6th ed., Bigelow), p. 262.

This rule is announced *in haec verba* as a determinative principle in each of the following decisions, in which the exact question here involved was presented and decided adversely to the contention of the appellants here: *In re Murphy's Estate,* 157 Cal. 63, 106 Pac. 230, 137 Am. St. 110; *In re Russell,* 168 N. Y. 169, 61 N. E. 166; *Herzog v. Title Guarantee & Trust Co., supra; Dulany v. Middleton,* 72 M'd. 67, 19 Atl. 146. See, also, 30 Am. & Eng. Ency. Law (2d ed.), p. 718; 40 Cyc. 1473.

Applying this rule to the third clause of the will above quoted, it is evident that, standing alone, that clause was not a gift to a class collectively, but a distributive gift to the individuals named. The number of persons was certain at the time of the gift and the share which each was to take was definite and in no way dependent for its amount upon the number who might survive. The devise was "to my son, Heman Everett Peck, and to his sons, Frank Peck, Roy Peck and Ora Peck, the remaining undivided two-thirds (2-3) interest in and to the above described real estate to be divided equally between them share and share alike." This clause evinces no intention that the extent of the interest given to any of the persons named should be determined by the ultimate number of persons. The four persons named do not meet Jarman's popular definition of a class. They could not be designated by any general name, as "children" or "grandchildren." One was a son, the others grandsons. This fact, though not

controlling, is at least significant in view of the fact that the
testator used no other words indicating an intention to treat
them as a class or that the survivors should take the entire
two-thirds interest mentioned.

There is another general rule of construction which, under
different forms of expression, has met an almost universal
approval by the courts.

"Where there is a gift to a number of persons who are in-
dicated by name, and also further described by reference to
the class to which they belong, the gift is held *prima facie*
to be a distributive gift and not a gift to a class." Page,
Wills, § 543.

See, also, *In re Hittell's Estate*, 141 Cal. 432, 75 Pac. 53;
*Kent v. Kent*, 106 Va. 199, 55 S. E. 564; *Moffett v. Elmen-
dorf*, 152 N. Y. 475, 46 N. E. 845, 57 Am. St. 529; *Frost
v. Courtis*, 167 Mass. 251, 45 N. E. 687; *Dildine v. Dildine*,
32 N. J. Eq. 78, 80; *In re Russell*, and *In re Murphy's Es-
tate, supra;* Rood, Wills, p. 317, § 479; Remsen, Wills, p.
93; 30 Am. & Eng. Ency. Law (2d ed.), 718. Applying
this rule to the clause of the will under discussion, it is plain
that, even had the four persons named stood in the same
relation to the testator so as to be capable of one general class
description, and had they been so described, the further par-
ticular designation by name must have been held to constitute
the devise to them in equal parts a distributive gift and not
a gift to a class. So far as this clause and the one preced-
ing it are concerned, the testator simply indicated his wife,
his son and his three grandsons by name as his devisees of
definite interest in the property in question, indicating in a
general way their relation to himself. As stated in *Bill v.
Payne, supra*:

"It is suggested that the nephews and nieces, excluding the
sister, may well enough take as a class. But that destroys
the unity of the gift and makes a division of the devisees. We
fail to discover that the testatrix had any such intention. She
simply named the legatees, indicating in a general way the
relation which each sustained to herself, and provided that

her property should be equally divided among them. Thus each one took individually and not as a member of a class, as a tenant in common and not as a joint tenant."

The supreme court of California, *In re Murphy's Estate, supra,* was confronted with a situation substantially the same as that now before us, save that there the general heirs claimed the property covered by the lapsed legacy, while here the claim is made by the widow as residuary devisee. The mooted clause of the will there involved was as follows:

"Fourth: It is my will and desire that all the rest of my property both real estate and personal property shall go to, and be equally divided among the four children of my late sister Catherine F. Flynn, deceased; that is to say: I give, devise and bequeath all the rest of my personal property and all my real estate of whatsoever kind and wheresoever situate, share and share alike, to Timothy J. Flynn, William D. Flynn, Mary Jane Logan and Kate I. Prendergast."

William D. Flynn died without issue prior to the death of the testator. The court, after announcing the general principles of construction to which we have referred, and citing many sustaining authorities, uses the following language:

"But, assuming, however, that the language used in the clause in question is capable of two different legal meanings resulting from the testator devising his estate to the four children of his late sister, followed by other words of express devise to each of the children by name and in equal proportions, still this mention of them by name and a devise to them in equal shares will control the description of them as children of his deceased sister. If words, which, standing alone, would be effectual to create a class, are followed by equally operative words of devise to devisees by name and in definite proportions, the law infers from the designation by name and mention of the share each is to take, that the devisees are to take individually and as tenants in common and that the descriptive portion of the clause (children of a deceased sister) is intended merely as matter of identification."

In addition to the foregoing authorities, the following may be cited as sustaining our construction of the clause of the

will here in question: *Rockwell v. Bradshaw,* 67 Conn. 8, 34
Atl. 758; *Ritch v. Talbot,* 74 Conn. 137, 50 Atl. 42; *Church
v. Church,* 15 R. I. 138, 23 Atl. 302; *Dresel v. King,* 198
Mass. 546, 85 N. E. 77, 126 Am. St. 459; *Lyman v. Coolidge,*
176 Mass. 7, 56 N. E. 831; *Langley v. Westchester Trust
Co.,* 180 N. Y. 326, 73 N. E. 44; *Auger v. Tatham,* 191 Ill.
296, 61 N. E. 77; *In re Sharpless' Estate,* 214 Pa. 335, 63
Atl. 884.

As we have intimated, these rules of construction are not
absolute. They must give way to the dominant intention of
the testator when that intention has been clearly ascertained.
The appellants insist that the whole will shows a dominant in-
tention on the testator's part that Heman E. Peck and his
sons should take as a class. We have quoted every provision
of the will which can have any possible bearing upon this
question. It fails to disclose any such intention. It is
argued, in effect, that the intention is explicit to give only
an undivided one-third of the property in question to the
widow, but that intention is no more explicit than the inten-
tion to give of the other undivided two-thirds one-fourth only
to each of the four persons named, since the other undivided
two-thirds is given specifically "to be divided equally be-
tween them, share and share alike." It is insisted that, by
the division of the Peck building into two parts of one-third
and two-thirds, there is an implied intention that, in no
event, shall the widow take more than the undivided one-third
of the property in question; but, in view of the fact that
there is no direct provision for survivorship among the four
named devisees of the other two-thirds, and that, under the
fifth clause of the will, there is a direct provision that the
widow take the residuum of the estate, no implication that
she can in no event take more than an undivided one-third of
the real estate here in question can reasonably arise. It is
also argued that the testator's knowledge that his son and
grandsons on the one hand, and his second wife, the respond-
ent, on the other, were not altogether friendly, was a circum-

stance from which to infer an apparent intention on his part
to give the two-thirds of the property in question to his son
and grandsons as a class, with the incident of survivorship
in case of the death of any of them prior to his own demise.
Had this been his dominant intention, it is difficult to conceive
a reason for the omission from his will of any reference to the
intended survivorship while specifying with particularity
the son and the three grandsons by name, and providing that
they take in equal parts, "share and share alike." To over-
ride the plain terms of the will on the mere suggestion of a
possible contrary motive, would be to rewrite the will, not to
construe it. Again, as said in *Bill v. Payne, supra*:

"Conceding then that the testatrix intended to disinherit
her sister, it must be remembered that she could only do that
by effectively giving her property to others. That she at-
tempted to do. That she failed was owing to events which
occurred after making her will,—events for which she made
no provision as she might have done. It frequently happens
that legatees die during the lifetime of the testator. The
testatrix could have provided for such a contingency by giv-
ing it to the survivors, or to other parties. She did neither.
There is therefore some presumption that she intended that
the law should settle the matter. That presumption is
strengthened by the fact that she had an opportunity to
change her will after one or more of the legatees had died,
and failed to do so."

In the case before us, the presumption that the widow take
is even stronger than that in favor of the sister in the case
above quoted. There was no intention to disinherit the widow,
or to withhold from her everything except a definite bequest.
On the contrary, she was expressly made the beneficiary of
the residuary clause of the will. The supposed controlling
motive was as well known to the testator after the death of
Ora Peck as it was before. Still, even after the death of Ora
Peck, the testator made no provision for the survivorship of
the devise to him in favor of the other three. If that had been
his dominant intention at any time or for any reason, he would
surely then have so changed his will as to express it, since a

contingency which the will did not recognize or provide for other than by the residuary clause had then clearly arisen. *In re Hittell's Estate, supra; Starling's Executor v. Price,* 16 Ohio St. 29. The third paragraph of the will, on its face, must be construed as a gift to the individuals named as tenants in common, and not a gift to a class, and we fail to find anything in other parts of the will or in the attendant circumstances evidencing any other intention on the testator's part.

The authorities relied upon by the appellant are: *Springer v. Congleton,* 30 Ga. 976; *Warner's Appeal from Probate,* 39 Conn. 253; *Talcott v. Talcott,* 39 Conn. 186; *Bolles v. Smith,* 39 Conn. 217; *Stedman v. Priest,* 103 Mass. 293; *Jackson v. Roberts,* 14 Gray 546; *Schaffer v. Kettell,* 14 Allen 528; *Swallow v. Swallow,* 166 Mass. 241, 44 N. E. 132. Nearly all of these cases are noticed by the supreme court of California in the opinion *In re Murphy's Estate, supra.* As there pointed out, in none of them was any different rule of construction announced from those which we have here invoked. In *Church v. Church, supra,* nearly all of these cases are discussed and distinguished. In each of them there was found, either in the will itself or in the surrounding circumstances, clear and convincing evidence of an intention on the testator's part to make a gift to the legatees or devisees named as a class and not as individuals. Here, however, we cannot find anything, either in the will itself or in the surrounding circumstances, to overcome the presumption that, by naming the devisees and the portions each should take, the testator intended a distributive gift.

II. The will being noninterventional, there has been no decree of court distributing the estate, but it is contended by the appellants that the respondent has, by agreement with the other devisees, distributed the entire property in question, one-third to herself, and two-thirds to the appellants Peck. The authorities cited by the appellants in this connection go no further than to sustain the view that, where

there has been an actual distribution of the estate, accepted as such by the devisees or legatees, it is valid and binding without any order of court making the distribution or affirming the distribution made, and that, after such distribution, the executor or administrator loses control over the *res* distributed. This may be conceded, but the question here presented is: Has there been any distribution of the property in question? There is no evidence of, nor is it claimed that there was, in fact any specific or direct agreement to that effect. The evidence of distribution relied upon is found in the fact that the respondent joined in the lease of February 17, 1911, to the Combination Club Cafe, which provided that she should receive one-third of the rent and that the other two-thirds should be paid to Heman Everett Peck. The latter testified that the defendant then said that she wanted her share of the rent paid to her, and that as to the other shares, it made no difference to her as it was none of her business. The respondent emphatically denied making any such statement, and testified that she agreed to this division because Heman E. Peck requested it, complaining that he was in great need of money, and that she then, and at all times, had insisted that she owned an undivided one-half of the property.

Another circumstance relied upon is the claim that, when the Howard mortgage was given by the appellants Peck, the respondent read it and knew that it covered an undivided two-thirds of the property and that, in order to facilitate the making of the loan secured by the mortgage, she made an affidavit that all the debts of the estate had been paid and that she accepted part of the proceeds of that mortgage in payment of a prior mortgage held by herself. The respondent denied having read the mortgage and denied any knowledge that it covered an undivided two-thirds of the property. It is manifest that this, and other evidence of the same character, could only be effective as proof of distribution by estopping respondent to dispute distribution.

III. Giving to this evidence all the probative force of

which it is capable, it seems to us to fall far short of establishing an estoppel *in pais* against the respondent in favor of appellants Peck. These transactions in no way redounded to the benefit of respondent or to the injury of appellants Peck. One or the other of these results would be essential to an estoppel. Neither of these matters had any tendency to place the respondent in any better position than she was in before, and certainly placed the appellants Peck in no worse position. In fact, they alone were the gainers by both transactions. No element of misrepresentation to the detriment of appellants Peck enters into either transaction. The appellants were as fully cognizant of all the facts and of the provisions of the will as was the respondent. We have been cited to no decisions of any court sustaining an equitable estoppel on facts such as these. On the contrary, our own courts recognize the necessity of a direct benefit on the one hand or an injury on the other to create or effect an estoppel. *Hughes v. New York Life Ins. Co.*, 32 Wash. 1, 72 Pac. 452; *Murray v. Briggs*, 29 Wash. 245, 69 Pac. 765; *Daniel v. Gold Hill Min. Co.*, 28 Wash. 411, 68 Pac. 884; *Butler v. Supreme Court of the Independent Order of Foresters*, 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293. See, also, *Mutual Life Ins. Co. of New York v. Phinney*, 178 U. S. 327; *Trenton Banking Co. v. Duncan*, 86 N. Y. 221.

IV. Finally, it is contended that the respondent has mistaken her remedy. This claim is apparently based upon the assumption that there has been a distribution of the estate and that this action is equivalent to a collateral attack upon the title conferred by such distribution. We find no merit in this contention. This is not an action to contest the will, nor, primarily, to construe the will. It is an action to quiet title, in which the will is invoked as a muniment of title. We can conceive of no reason why an independent action to quiet title may not be maintained where that title depends upon the construction of a will which would not apply where title depended upon the effect of a deed or any other instrument.

The respondent has interposed a motion to dismiss the appeal of the defendants Howard on the ground that their notice of appeal was belated. The defendants Peck, on January 3, 1913, appealed from the decree and served their notice of appeal on the attorneys for the defendants Howard on the same day. The defendants Howard did not join in that notice, nor did they join in that appeal by filing a statement to that effect with the clerk, nor have they taken any independent appeal within ten days from that appeal. They served their notice of appeal on February 3, 1913, one month after the original appeal was taken. The statute, Rem. & Bal. Code, § 1720 (P. C. 81 § 1191), so far as material, reads as follows:

"All parties whose interests are similarly affected by any judgment or order appealed from may join in the notice of appeal whether it be given at the time when such judgment or order is rendered or made, or subsequently; and any such party who has not joined in the notice may at any time within ten days after the notice is given or served, serve an independent notice of like appeal, or join in the appeal already taken by filing with the clerk of the superior court a statement that he joins therein or in some part thereof, specifying in what part. Any such party who does not so join shall not derive any benefit from the appeal unless from the necessity of the case; nor can he independently appeal from any judgment or order already appealed from, more than ten days after service upon him of written notice of the former appeal unless such former appeal be afterwards dismissed."

The terms of the statute are imperative and leave no room for construction. *Griffith v. Seattle Nat. Bank Bldg. Co.*, 16 Wash. 329, 47 Pac. 749. It is manifest that the interests of the defendants Peck and the defendants Howard are similarly affected by the decree. While those interests are not identical, they are all traceable to the title claimed by the Pecks under the will. The defenses set up by the defendants Howard were identical with those set up by the Pecks. The answers were, in all material particulars, the same. The interests of the Howards and the Pecks, so far as attacked by the plaintiff's

complaint, and so far as affected by the issues raised by the answers, were exactly the same. The evidence adduced in support of both answers was identical. The decree founded thereon necessarily affected the interests of all of the defendants similarly. We are loath to dismiss an appeal in any case, but, in view of the express terms of the statute, we have no discretion in the matter. The motion is granted.

The judgment is affirmed.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.