[No. 13013. Department One. April 8, 1916.]

CHARLES W. MACEY et al., Respondents, v. BENJAMIN C. FURMAN et al., Appellants.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE—ESTOPPEL. Vendees, entitled to a deed containing personal covenants, are not estopped to rescind for failure of title by the fact that they orally agreed to take a deed from a third person who held the legal title, the vendors not being parties to such agreement and having no notice thereof, and the vendees deriving no benefit therefrom.

SAME—RESCISSION BY VENDEE—LACHES—ESTOPPEL. Vendees in a trade for land are not estopped by laches from rescinding for failure of title, where their delay was due to the vendor's request for time; since the vendors by delaying to answer are estopped to invoke delay as an estoppel against rescission.

SAME. Failure to abandon possession of land improved by mistake, does not estop the vendee from rescinding for failure of title.

SAME—MISTAKE—REMEDIES OF VENDEE.—RESCISSION OR REFORMATION. Rescission, and not reformation of a deed to another tract originally given by mistake, is the vendee's proper remedy where the vendors had no title to the land pointed out and actually purchased.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered May 7, 1915, upon findings in favor of the plaintiffs, in an action for rescission, tried to the court. Affirmed.

*Parker & Holden,* for appellants.

*E. B. Velikanje, Milan Velikanje,* and *R. B. Milroy,* for respondents.

ELLIS, J.—Action commenced in December, 1914, to rescind a partially performed contract and for damages. The court found the following facts: In October, 1912, the parties entered into a contract whereby plaintiffs agreed to exchange a span of mares, their halters, and collars, for a certain five-acre tract of land then identified by the parties

[1]Reported in 156 Pac. 548.

by actual observation on the ground, and fifty dollars in money. Pursuant to the contract, plaintiffs delivered the personal property to defendants, who paid the fifty dollars and conveyed to plaintiffs another five-acre tract described as the east half of lot 2, of Zillah Heights Ranch, in Yakima county, which the parties believed was the correct description of the land identified and agreed to be conveyed, but the correct description of which was, in fact, the east half of lot 1, of Zillah Heights Ranch. Plaintiffs entered into the contract and parted with their personal property in reliance on defendants' statement that they owned the land identified, when in fact they did not have the legal title to that land but had purchased it from Cornelius Furman, father of defendant Benjamin C. Furman, had paid for it, taken possession of it, and had received from him a deed to the east half of lot 2, in the mutually mistaken belief that such was the correct description. Defendants were in actual possession and equitable owners of the east half of lot 1, when they made the contract with plaintiffs, but the legal title was still in Cornelius Furman.

In April, 1914, plaintiffs first learned of the true situation, and on April 16, 1914, through their attorney, apprised defendant husband of the mistake and requested a return of their mares, halters, and collars, but defendant stated he would do nothing in the premises until he could consult his lawyer. In October, 1914, plaintiffs tendered to defendants $70 in gold, and their deed reconveying to Benjamin C. Furman the east half of lot 2, and demanded from him a restoration of their personal property, which tender and demand defendants refused.

From October, 1912, to sometime in February, 1915, plaintiffs were in actual possession of the land agreed to be conveyed, cared for the orchard, raised one crop of corn, built and used a barn and dug a cistern thereon, thus appreciating the value of the land in the sum of $250. Shortly after this action was commenced, defendants made and tendered to

plaintiffs a deed of the east half of lot 1, by a correct description, which deed plaintiffs refused to accept; and in January, 1915, Cornelius Furman deeded to defendant husband, also, by a correct description, the same land.

Late in April or early in May, 1914, plaintiff Charles W. Macey orally agreed with Cornelius Furman to deed to him the east half of lot 2, if he would deed to Macey the east half of lot 1, and soon after Cornelius Furman did sign a deed containing apt words to convey to plaintiffs the last described land, told Macey he had done so and would deliver it to plaintiffs upon receiving their deed to him of the east half of lot 2. Macey then told Cornelius Furman that plaintiffs would make such deed, but they have failed to do so.

At the time of the transfer of the mares, one of them was with foal, since born; and when this action was commenced, the sheriff of Yakima county, pursuant to a claim and delivery affidavit and bond made and furnished by plaintiffs, seized the mares, halters, and collars, and delivered them to plaintiffs, who ever since have had and still have them.

The court concluded, as matter of law, that plaintiffs are entitled to retain the personal property in question and to recover from defendants the amount of their permanent improvements on the land less $50 paid by defendant, to wit, $200. Judgment and decree went accordingly. Defendants appeal, bringing the case here on the court's findings to which they took no exception, contending only that they do not support the conclusions of law and decree.

I. Appellants' main claim is that respondents are estopped to rescind by the fact, as found, that, soon after respondents discovered the mistake, they orally agreed with the elder Furman to take his deed which would have vested in them the full legal title to the land of which they already had the equitable title. But the court did not find that the appellants were parties to this agreement, or even knew of it, and their answer negatives such knowledge. They there aver that they were ignorant of the fact that the elder Furman's deed to

them did not convey the east half of lot 1, which they had agreed to convey to respondents, until January 28, 1915. They were advised of the mistaken description in their own deed to respondents, and that respondents were insisting on an amicable rescission because of it, as early as April 16, 1914. Yet, from then until after this action for rescission was actually commenced in December, 1914, they made not a move to correct the mistake but put the respondents off with a request for time to see their lawyer. Their inaction could not have been the result of an agreement to which they were strangers and of which they were ignorant, nor could they have been in any degree influenced or prejudiced by it. Certainly, so far as appellants were concerned, the agreement with the elder Furman was wholly lacking in consideration. As against them, respondents were entitled, under their contract, in any event, to a deed from appellants themselves containing their personal covenants in usual form. This right was not waived by a contract of which they were ignorant and because of which it is self-evident they did not alter their position for the worse. The respondents derived no independent benefit from the agreement with the elder Furman, and appellants suffered, and could have suffered, no detriment from the failure of its consummation. The circumstance relied upon is lacking in every element of equitable estoppel. *Peck v. Peck*, 76 Wash. 548, 137 Pac. 137, and many of our own decisions there cited. They were, in any event, obligated to convey.

II. Equally abortive is the claim that respondents were guilty of laches in rescinding. They called attention to the mistake immediately on discovering it, and requested an amicable rescission. It would have been idle to demand a deed when appellants could not have conveyed title. Appellants did not definitely refuse to rescind, but requested time to consult their lawyer. Respondents were justified in waiting a reasonable time for an answer. The answer never came, and appellants never expressed a willingness to correct

the mistake nor tendered any deed until after suit.   Even then, they had no title.   Appellants, by their own inaction inducing respondents to delay, are estopped to invoke that delay as an estoppel against rescission.   Nor did respondents' failure to abandon possession of the land estop them to rescind.   *Snarski v. Washington State Colonization Co.,* 53 Wash. 221, 101 Pac. 839.

III.   We find no merit in the assertion that respondents mistook their remedy and should have brought an action for reformation of the deed originally received from appellants. Reformation would have been no remedy.   Respondents had no title upon which a reformed deed could operate.

IV.   An argument is based upon the claim that respondents were to take the land subject to a mortgage which had been foreclosed, or was in process of foreclosure at the time of trial.   The court, however, made no finding on the subject and the evidence is not before us.   We shall not notice this point further than to say that the existence of the mortgage and the imminence of its foreclosure would furnish an added reason why respondents should have been furnished a deed conveying title in order that they might protect themselves by paying the mortgage or redeeming from the foreclosure.

We are clear that the trial court reached the correct conclusion on the facts found.

Affirmed.

MORRIS, C. J., CHADWICK, and MOUNT, JJ., concur.