[No. 3233.　Decided November 15, 1900.]

Fred L. Griffin, *Administrator, Respondent and Appellant, v.* Stanton Warburton *et al., Appellants and Respondents.*

EXECUTORS AND ADMINISTRATORS—DISTRIBUTION OF ESTATE—NECESSITY FOR DECREE.

Where all the debts against a decedent's estate have been either satisfied or barred, and all expenses of administration paid, and the administrator and the heirs have agreed among themselves to abandon the probate proceedings, and the realty belonging to the estate has been distributed by agreement among the heirs according to their several interests, that portion of the estate must be presumed as having been fully administered, and an administrator *de bonis non* cannot subsequently take possession of the realty and proceed to administer thereon because of the failure of the former administrator to procure a decree of distribution through the proper court, since under Bal. Code, § 4640 *et seq.*, title vests in the heirs immediately on the death of the ancestor, without any necessity for an order of court, subject only to the debts against the estate, family allowance and expenses of administration.

SAME—EXECUTION AGAINST HUSBAND—SALE OF INTEREST IN COMMUNITY ESTATE—RIGHTS OF PURCHASER.

Where the interest of the husband in realty acquired by the community composed of himself and wife, was levied upon and sold under a judgment for a debt incurred by him after the death of his wife, which sale was acquiesced in by him and subsequently upheld by the court, in an action by the purchaser to quiet title against the wife's heirs, wherein the purchaser was awarded the husband's interest in such realty, the purchaser must be deemed to have succeeded to all the rights of the husband in the realty to such an extent as to vest him with an interest therein sufficient to warrant his right to question the attempted exercise of dominion thereover by an administrator *de bonis non* of the wife's estate.

Appeal from Superior Court, Pierce County.—Hon. James A. Williamson, Judge.　Reversed.

*Bates & Murray, J. H. McDaniels* and *Stanton War-burton,* for appellants.

*Jesse Thomas* and *Charles S. Fogg,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—This is an action of ejectment brought by the plaintiff, Griffin, as administrator *de bonis non* of the estate of Sophia D. Bacon, deceased, to recover the possession of an undivided two-thirds interest in lot 1 in block 1105, in the city of Tacoma, Pierce county, Washington, from the defendants, Warburton and Sandberg. The trial court instructed a verdict upon the facts admitted by the pleadings, and rendered a judgment in favor of the administrator for the recovery of the possession of the property, together with its rental value from the time of the commencement of the action, but denied the right of the administrator to recover the rental value of the premises from the death of the former administrator. Each side appeals from that part of the judgment unfavorable to its contention.

The facts upon which the judgment is based may be summarized as follows: On March 26, 1878, the lot described was acquired by E. G. Bacon and Sophia D. Bacon, who were then husband and wife, by purchase with community funds, the title thereto being taken in the name of E. G. Bacon. Sophia D. Bacon died, intestate, on the 28th day of July, 1880, leaving, as the sole heirs at law of her interests in the property, two daughters by a former marriage, and one daughter, the issue of her marriage with E. G. Bacon. In April, 1893, nearly thirteen years after the death of his wife, E. G. Bacon applied for, and on the 21st day of that month there was issued to him by the superior court of Pierce county, the county in which the lands are situated, letters of administration of

her estate, whereupon he duly qualified as such adminis-
trator. Thereafter the administrator caused the statutory
notice to creditors to be published for the required time,
but no claims were presented to the administrator or to
the court against the estate within the year prescribed for
the presentation of claims. On the 8th day of April,
1895, the appellant Warburton obtained a judgment
against E. G. Bacon in the superior court of Pierce coun-
ty, and caused execution to be · issued thereon and the
interest of E. G. Bacon in the property to be levied upon
and sold, at which sale Warburton became the purchaser
of such interest. The sale was had on March 2, 1896,
was afterwards duly confirmed by the court, and a sheriff's
deed issued to Warburton on May 4, 1897. Between the
time of the confirmation of the sale and the issuance of
the sheriff's deed, E. G. Bacon died intestate. Warbur-
ton thereafter purchased the interest of one of the heirs
of Mrs. Bacon, and some time in 1897 began an action to
quiet title in himself against all of the heirs of Mrs. Bacon,
making them parties defendant, alleging that he was the
owner in fee simple of the whole of the property. Issue
was taken on the allegations of his complaint and trial
had before the court upon an agreed statement of facts,
from which the court found as conclusions of law that
Warburton was the owner, and entitled to the possession,
of an undivided two-thirds interest in the lot, and that
one of the heirs, Matilda B. White (she having purchased
the interest of the other heir), was the owner, and entitled
to possession, of the remaining one-third, and entered a
decree accordingly. Warburton thereupon appealed to
this court from that part of the decree which adjudged
Matilda B. White to be the owner of an undivided one-
third of the lot, and on its affirmance by this court(*War-
burton v. White,* 18 Wash. 511, 52 Pac. 233, 532) sued
out a writ of error to the supreme court of the United

States, where the cause was pending at the time the present action was tried in the court below, though subsequently affirmed. *Warburton v. White,* 176 U. S. 484 (20 Sup. Ct. 404). On March 4, 1898, upon petition therefor, the respondent was appointed administrator *de bonis non* of the estate, and on the 10th of that month brought this action to recover possession of the undivided two-thirds of the lot, which the decree of the court had awarded to Warburton, and its reasonable rental value from the death of E. G. Bacon, as before stated. In addition to the allegation that no claims against the estate of Mrs. Bacon were presented to the administrator, it is directly alleged in the answer of the defendant Warburton that there are no debts or claims of any character existing against the estate; also, "that after the time had elapsed in which creditors might file any claim against the estate of Sophia D. Bacon, as above set forth, said probate proceedings were abandoned and discontinued by agreement and understanding by and between the administrator, said E. G. Bacon," and the heirs of said estate, and the heirs thereupon took possession of the property. Whether or not Mrs. Bacon died seized of any property other than the property above described does not appear from the record, nor does it appear what representations were made to the superior court which induced it to appoint an administrator *de bonis non,* nor whether such administrator was appointed upon, or without, notice to the defendants and the other parties in possession of the real property.

Upon the facts shown by the record, it is apparent that, so far as this real property is concerned, there is no necessity for further administration upon it, or for the appointment of an administrator *de bonis non.* The causes which usually require the intervention of the probate court are nonexistent. There are no claims of creditors for which it can be held liable. If any ever existed,

they were conclusively barred, whether absolute or contingent, by the failure to present them within the year allowed by the statute for the presentation of claims after the first publication of the notice to creditors. *Barto v. Stewart,* 21 Wash. 605 (59 Pac. 480). There is no necessity for a decree of the probate court to determine the right of succession to the property. The agreement of the interested parties, and the judgment in the case of *Warburton v. White,* affirmed by this court, and since the commencement of this action reaffirmed by the supreme court of the United States, conclusively establish, as between the heirs, and the successors in interest to the heirs, this right of succession; and, should the administrator *de bonis non* be allowed to administer upon the property, it must, if not disposed of to pay the expenses of such administration, be distributed in accordance with the decree entered in that case. There is no necessity for a decree or order of distribution of the probate court in order to pass title to the real property from the ancestor to the heir. It is true that in *Balch v. Smith,* 4 Wash. 497 (30 Pac. 648), this court held that, "as a general proposition, force and effect can only be given to our statutes by holding that the intervention of the probate court and an adjudication and distribution thereunder are essential to the passing of the title of the ancestor to the heir so perfected as to make it beneficial to him"; but the legislature has changed the rule. The act of 1895 relating to the descent of real property, passed since that decision was rendered (Laws 1895, p. 197; Bal. Code, §4640 *et seq.*), enacts that

"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration

and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court, shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent. * * *"

The second section of the act provides that the rule "shall apply to and govern the transmission of title of lands, tenements and hereditaments in the case of estates of persons hereafter dying and of persons already deceased, whether letters testamentary or of administration have been granted on such estates or not, and the title of all heirs and devisees, and their grantees, to any such real property is hereby confirmed and made valid to the same extent as if this act had been passed before the death of such decedent;" and § 5 makes the rule applicable to community as well as separate estate.

This leaves the naked question whether or not the failure of the former administrator to secure a decree of the court directing a distribution renders the distribution made by him so far invalid as to authorize the administrator *de bonis non* to take possession of the property, where no necessity for such action on his part is shown to exist. It is urged upon us that, inasmuch as the statutes do not expressly provide that an administrator may make distribution without a decree of the court, any distribution made by him without such a decree must necessarily be void, and that the decisions of this court, in *Hanford v. Davies,* 1 Wash. 476 (25 Pac. 329); *Dunn v. Peterson,* 4 Wash. 170 (29 Pac. 998); *Hazelton v. Bogardus,* 8 Wash. 102 (35 Pac. 602); *Balch v. Smith, supra;* and other kindred cases that might be cited, in effect so hold. It must be admitted that there is much in these cases which lends color to this contention, and, did the statute now remain

the same as it was then, we would be constrained to follow
them. But these cases were decided prior to the statute
of 1895, and were based upon the principle that an ad-
ministration in, and a decree of distribution by, a court
having jurisdiction in probate was, presumptively at
least, necessary in order to pass title to real property from
the ancestor to the heir. As we have shown, however,
this presumption was overcome by that statute, and de-
ductions which may have been properly drawn from the
rule as it then existed, can have no binding force or effect
since the rule itself has ceased to exist. Hence we feel
at liberty to treat this as a case of first impression, to be
determined by the statute as it now exists.

It is not to be doubted that the formal and orderly
manner of proceeding for an administrator, before dis-
tributing the real property of an estate to the heirs and
devisees thereof, is to procure a decree of the court for
that purpose. This is the only way he can protect him-
self against a wrongful distribution; and such a decree
is always proper, as a means of protecting the record evi-
dence of title to real property which passes from an an-
cestor to an heir. But we cannot think a distribution of
the property of an estate by an administrator to those to
whom the property must ultimately go, made after the
debts of the estate and the costs and charges of adminis-
tration have been paid, is necessarily void because no
decree of the court was made directing it. Under the
statute as it now exists, the heirs upon the death of the
ancestor become vested at once with the full property,
subject only to the claims of the ancestor's creditors, and
the necessary costs and charges of administration. They
have the right of possession against all the world, except
the right of the administrator while these claims are be-
ing adjusted and satisfied. But the administrator's right
to the possession of the property of an estate is tempo-

rary, and is limited to the purposes of administration. When the claims of creditors are paid or barred, and the costs and charges of administration are satisfied, the estate is for all practical purposes fully administered upon, the right of possession in the administrator terminates, and the right of the heirs to the residue of the estate in his hands becomes absolute. The heirs are then entitled to have this residue delivered over to them as their own property, under the law; and it is made the duty of the administrator, by the statute, to surrender the property to them. This duty they can enforce by obtaining a decree of the court directing its performance. As such a decree, however, neither creates their title, nor their right of possession, to the property, a distribution made without it cannot be invalid. And especially is this so, where, as in the present case, the distributees are of adult age and otherwise competent to contract, and they agree with themselves and with the administrator upon the terms of distribution, and enter into the possession of the property after the distribution is made. The heirs but come into possession of their own property with the consent of the only person who can rightfully withhold possession from them, and they are not to be disturbed in such possession because of informalities in obtaining it.

Nor can an administrator be charged with mal-administration for distributing property without a decree of the court authorizing it, if it is done after the debts of the estate and the costs and charges of administration have been paid, and it is made to those having the right to the property. After the creditors are paid or barred, the distributees alone are interested in the estate. And when they are estopped from objecting, as they are either by agreeing to it, or by accepting the property when distributed, there is no one left who can lawfully complain, and the

administrator is entitled, on the settlement of his final account, to have his act approved.

Such, we understand, is the general rule. Judge COOLEY, in *Brown v. Forsche,* 43 Mich. 492 (5 N. W. 1011), construing the statutes of Michigan, which on this subject are similar to our own, says:

"For all purposes except the final passing of his accounts we think the administrator is to be considered as having settled the estate, when, having paid the debts reported by the commissioners, he has handed over the remaining property to the distributees. *Calkins v. Smith,* 41 Mich. 409. The distributees are then entitled to the property, and the administrator fully administers when he allows them to take it in the proper proportions. * * * Formal proceedings for the settlement of an estate are never necessary if all parties concerned can agree to dispense with them. This is often done, and the expense of administration thereby avoided. *Needham v. Gillett,* 39 Mich. 574; *Babbitt v. Bowen,* 32 Vt. 437; *Hibbard v. Kent,* 15 N. H. 516; *Carter v. Owens,* 41 Ala. 217. Family arrangements for this purpose, it is said, are favorites of the law, and when fairly made are never allowed to be disturbed by the parties, or by any others for them. *Walworth v. Abel,* 52 Penn. St. 370. Such an arrangement may be made after an administrator is appointed as well as before, and if the administrator is afterwards summoned to render his accounts, the court will accept as satisfactory, so far as it goes, the settlement the parties concerned have made. *Clarke v. Clay,* 31 N. H. 393. No doubt such a settlement will be subject to the rights of creditors in any case where the statutory proceedings have not been taken to bar their claims; but when these have been had, the right to take the property under voluntary arrangement must be commensurate with the right to compel the administrator to distribute it."

Mr. Woerner, after stating that the administrator is entitled to credit in his final account for advances made to the widow, and necessaries to minor heirs, whether ordered by the court or not, says:

"The same rule holds good in respect of payments to adult distributees and legatees. The accountant is entitled to credit against these to the full extent of payments made to them, whether ordered by the court or not. It is very evident, however, that such payment, without an order of the court, cannot affect the rights of creditors or other distributees or legatees; it has, therefore, been held irregular to allow the executor credit for payment of a legacy, where the court has not the power, or is not in condition, to adjudicate the validity of such payment. But a distributee or legatee, having received payment of his legacy or distributive share, will not be heard to object to credit therefor in the settlement of the administrator's account." Woerner, American Law of Administration, § 519.

And in the same work, at § 566, speaking of voluntary distributions, he says:

"The administrator will be protected in paying over to a legatee or distributee his share of the estate, if all the debts allowed against the estate have been paid, and the time has expired within which claims may be presented for allowance except upon special application to the probate court, although there has been no order of distribution or final settlement. So where there is an agreement among all of the distributees of an estate, it is binding upon them, although one of them be the administrator. And it follows from the doctrine allowing voluntary distribution among adult distributees, that one who does not consent to such distribution at the time, but subsequently takes the part allotted to him, whether an equal portion or not, thereby waives his right to object to the division and makes it good."

In 19 Enc. Pl. & Pr. 1079, the rule is stated as follows:

"In most of the states the statute makes it the duty of the probate court to order distribution to legatees and distributees of the balance found in the hands of the executor or administrator upon his accounting, and the only way in which the personal representative can effectually protect himself is by obtaining a decree for payment of

legacies or distributive shares and distributing the estate in accordance therewith. But where legatees or distributees are known and their shares are undisputed, and the claims of creditors are satisfied, it is a common practice to distribute without an order of court, the personal representative thereby taking the risk of paying the right amount to the right parties. And if all the distributees are of age and capable of acting for themselves, the final distribution may be made without an order of court where all the parties in interest consent to it."

Applying these principles to the case in hand, it is clear to our minds that this real property was fully administered upon by the first administrator, and was not a part of the estate of Sophia D. Bacon, deceased, remaining unadministered at the time of the appointment of the administrator *de bonis non*. As such it was not included within the letters of administration issued to him. By the express terms of the statute an administrator *de bonis non* is appointed to administer upon "the goods remaining unadministered," and he has no warrant to disturb the lawful acts of the administrator whom he succeeds.

The plaintiff insists that the defendant Warburton has no such interest in this real property as to permit him to question the right of the administrator *de bonis non* to its possession. He argues that the sale of the property under the execution issued upon the judgment against E. G. Bacon could pass no title to any property of the estate, and hence is void. *Yonley v. Lavender*, 21 Wall. 276, is cited in support of this contention. In that case it appeared that one Du Bose, having lands in the state of Arkansas, died in October, 1869, and that a certain Halleburton was appointed the administrator of his estate. Halleburton did nothing in the way of discharging his duty, and afterwards Lavender was appointed administrator *de bonis non*, and proceeded to administer upon the

16—23 WASH.

property. Thereafter one Gautier, a citizen of Louisiana, brought suit in the federal court against Lavender, as administrator, upon a debt contracted by Du Bose, obtained judgment against Lavender, and, at a sale under an execution issued on this judgment, Yonley bought certain lands belonging to the estate. Shortly thereafter Lavender brought an action of ejectment to dispossess the administrator. The courts of Arkansas held that the effect of the judgment was to establish the debt as a claim against the estate, but that the property of the estate could not be sold thereon under a writ of execution, and denied the right of Lavender to recover the property. The judgment was affirmed by the supreme court of the United States in the case cited. It is apparent that the rule announced in that case has no application to the facts presented in the case at bar. Here the judgment was obtained against Bacon in his lifetime on his individual debt, which was nowise connected with the estate, and his interest only in the real property belonging to the estate was sold under the writ of execution issued thereon. By that sale Warburton could acquire only such rights in the real property as Bacon had therein, namely, a right to an undivided half of the lot in question, subject to the debts of the community, and the costs and charges of administration. But whether this sale was valid or invalid is not now an open question. The acquiescence of E. G. Bacon in the sale, and judgment in the case of *Warburton v. White,* conclusively establishes the title of Warburton to the property against all persons who have a right to question that title. The administrator *de bonis non* may dispute Warburton's right to the possession, but, if the property was subject to administration by him, Warburton at the conclusion of such administration would have the right to have such interest as Bacon formerly had in the property distributed to him. As between the owners of

the legal title to the property he stands in the place of Bacon, and has all the rights therein that Bacon had as a member of the community. The case of *Mears v. Lamona,* 17 Wash. 148 (49 Pac. 251), cited by the plaintiff, does not contravene this principle. The facts of that case necessary to be stated in order to point out the distinction are too involved and would require too much space to justify our repeating them here, and we shall not attempt to do so. The point decided, however, is clearly stated in the syllabus as follows:

"While the vested interest in an estate of a devisee having a future right of possession, but no beneficial interest meanwhile, may be reached by his creditors, yet where an action in the nature of a creditor's bill is brought for the purpose of subjecting such vested interest to the lien of a judgment, the court, in ordering sale of his interest in the estate, is warranted in decreeing that sale be postponed until his intangible interest is reduced to possession, when it appears that an immediate sale would cause an inequitable sacrifice of his property, and that the creditor would be compelled to wait but a few years in consequence of such postponement.

The judgment of the lower court is reversed, and the cause remanded with instructions to enter judgment for the defendant.

DUNBAR, C. J., and REAVIS and ANDERS, JJ., concur.