[No. 11806.    Department One.    July 22, 1914.]

ELLEN DENTON, *as Administratrix etc., Appellant,* v.

TILLIE SCHNEIDER, *as Executrix etc.,*

*Respondent.*[1]

WILLS—CONSTRUCTION—TESTAMENTARY TRUST OF INCOME—TERMINATION—RIGHT TO REMAINDER. A will devising all a testator's estate in undivided halves to his son and daughter, share and share alike, subject to a trust disposing of the total income of all his real estate for the use and benefit of a specified minor child of his son and a specified minor child of his daughter equally, to be paid by the executor to the respective guardians of said minor children, share and share alike, the trust to terminate upon the attainment of the age of majority by the younger legatee or upon the death of both legatees before either attains the age of majority, and providing that, in the event of the death of his son's child before becoming of age, the other trust legatee should continue to receive his undivided one-half until the age of majority, without any provision being made as to the deceased legatee's share of the income, plainly shows the intent of the testator to create a trust for particular individuals and not for the benefit of two classes of persons, and consequently the trust as to the deceased child would lapse, and her share of the income vest in the devisees, and not survive to her father.

EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR DE BONIS NON—RIGHT TO SUE—STATUTES. Under Rem. & Bal. Code, §§ 1430, 1431, 1538, providing that, in the case of the removal or death of an executor or administrator, he or his representative shall account to his successor, that the succeeding administrator may proceed by law against any delinquent former executor or his personal representatives, and that any administrator may, in his own name, for the use and benefit of all parties interested in the estate, maintain actions on the bond of an executor or of any former administrator of the same estate, authority is conferred upon an administrator *de bonis non* to maintain an action against a former executor or his personal representatives for the conversion of the rents and profits coming into his hands.

JUDGMENTS—RES JUDICATA—MATTERS NOT DECIDED. The filing by a devisee of exceptions to the report of an executor showing that he had appropriated certain income to his own use, upon which no formal judgment was entered, the court approving the report with the intimation that the proper time to raise the objection was on

[1]Reported in 142 Pac. 9.

the final accounting, would not constitute *res judicata* in an action by the administratrix *de bonis non* for a conversion of the income.

EXECUTORS AND ADMINISTRATORS—CLAIMS—ESTOPPEL. The fact that an administratrix *de bonis non* had, from time to time since her appointment, made reports without including a claim against the former executor for money converted, would not estop her from suing his personal representatives for the conversion, as it was not properly an asset of the estate so long as the money was withheld or the will unconstrued.

Appeal from a judgment of the superior court for King county, Smith, J., entered September 13, 1913, dismissing an action upon a rejected claim against an estate, after a trial to the court. Reversed.

*Shorett, McLaren & Shorett* (*F. A. Gilman,* of counsel), for appellant.

*Bausman, Kelleher, Oldham & Goodale,* for respondent.

ELLIS, J.—The plaintiff, as administratrix *de bonis non* of the estate of Daniel Schneider, deceased, brought this action against the executrix of the former executor of that estate for the sum of $2,500, based upon a rejected claim against the estate of Fred M. Schneider, the former executor. On September 6, 1901, Daniel Schneider died, leaving a will, the clauses of which material here are as follows:

"Third, I hereby give, bequeath and devise to Fred M. Schneider, my son, of King county, Washington, and to Ellen Stull, my daughter, of the state of California, all my property, and estate, of every nature whatsoever, wheresoever situate, both real, personal and mixed, in undivided halves, share and share alike; subject, however, to the fulfillment of the uses and trusts hereinafter provided for."

"Fifth: I hereby direct that my said executor shall receive all the rents, profits, issues and incomes of all of my said real estate, and that he shall use and dispose of the same for the use and benefit of Clarence Stull, aged eleven years, son of the said Ellen Stull, and also for the use and benefit of Freeda Schneider, aged five years, daughter of the said Fred M. Schneider, during the whole of the period until the said Freeda Schneider shall have attained the age of majority,

this trust to terminate at that date or when said Clarence Stull shall have attained the age of majority, in the event of the death of said Freeda Schneider prior to that time, in which event the said Clarence Stull shall continue to receive his undivided one-half of said rents, issues and profits of said real estate, until he shall have attained the age of majority; the trust hereby created shall also terminate in the event of the death of both said Clarence Stull and said Freeda Schneider before either of them shall have attained the age of majority; said rents, issues and profits to be divided equally, when received, and paid by my said executor to the respective guardians of the persons and estates of said minor children, share and share alike, as often as the same shall be received, but not oftener than once in each calendar month."

Fred M. Schneider and Ellen Stull were all of the children of Daniel Schneider. Fred M. Schneider was named as executor, qualified as such on September 17, 1901, and continued so to act until his death. He collected the income and paid one-half to Freeda Schneider and one-half to Clarence Stull, through their respective guardians, as directed by the will, until February, 1907, when Freeda Schneider died, leaving as her heirs at law her father, Fred M. Schneider, and her mother, Tillie Schneider, the defendant herein.

After Freeda's death, he continued to pay one-half of the income to Clarence Stull, and paid the other one-half to himself, claiming it in his own right. The amount which he so appropriated prior to his death was $2,500. On September 14, 1908, he made a report, showing that he was so applying the income. Ellen Stull, now Ellen Denton, filed exceptions to this report, claiming that he had no right to apply any of the income of the property to his own use, and asking for his removal. At the hearing upon these exceptions, she abandoned the demand for the removal of Fred M. Schneider as executor. No formal judgment was ever entered on these objections, nor any formal decree made construing the will or adjudicating the rights of the beneficiaries thereunder, the court then intimating that, as the objections involved a

construction of the will, the proper time to raise them was on the final accounting.

In May, 1911, Fred M. Schneider died, and Ellen Denton was appointed administratrix *de bonis non* with the will annexed, of the estate of Daniel Schneider, deceased. She qualified and has ever since acted in that capacity. There has been no final settlement and decree of distribution of the estate. Since her appointment, she has, from time to time, made reports, but in none of these has she included the claim here in question as an asset of the estate. On the death of Fred M. Schneider, his will was admitted to probate and the defendant, Tillie Schneider, was appointed executrix. Ellen Denton thereupon presented this claim on behalf of the estate of Daniel Schneider, deceased, for the sum of $2,500 against the estate of Fred M. Schneider. The defendant, as executrix of that estate, refused to allow the claim, and this suit was instituted. The cause was tried to the court without a jury. The action was dismissed. The plaintiff appealed.

Two questions are presented: (a) Did the bequest of the income in trust to the use and benefit of Clarence Stull and Freeda Schneider lapse as to the share of Freeda Schneider on her death, and thereafter pass under the third clause of the will, or did it survive for the benefit of her father, Fred M. Schneider, during the life and minority of Clarence Stull? (b) Has the appellant, as administratrix *de bonis non*, such an interest as will enable her to maintain this action in that capacity?

(a)   It is a universal rule that, in construing a will, the courts must seek for and give effect to the testator's intention, if lawful. *Herzog v. Title Guarantee & Trust Co.*, 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146. The rule is also universal that the testator's intention must be sought first of all in the will itself and that the intention which controls is that which is positive and direct; not that which is negative or inferential. *Peck v. Peck*, 76 Wash. 548, 137 Pac. 137; *McCullough v Lauman*, 38 Wash. 227, 80 Pac. 441.

An examination of the will here involved leaves no doubt as to the testator's intention, no room for a resort to anything *aliunde* the will itself to determine that intention. By the third clause of the will, the entire estate was bequeathed and devised to the testator's son and daughter, Fred M. Schneider and Ellen Stull, "in undivided halves, share and share alike; subject, however, to the fulfillment of the uses and trusts hereinafter provided for." This language is unambiguous. Clearly, both halves were subject to the fulfillment of all trusts. This clause, standing alone, evinces no intention that the income of the separate halves is to be subjected to the fulfillment of any separate uses or trusts. If, therefore, any such intention is to be found in the will itself, or any ambiguity in the intention, it must be found in the fifth clause, defining the only uses and trusts provided for in the will. In that clause, we find the whole income bequeathed in trust to the use and benefit of Clarence Stull, aged eleven years, and Freeda Schneider, aged five years, to be divided equally between them, share and share alike, with express and particular provisions for every possible contingency which can, in any way, affect these two minor beneficiaries personally for whose benefit alone this trust is declared. It is declared that this use and benefit shall continue, first, during the whole period until Freeda shall have attained the age of majority; second, in case of Freeda's death before her majority, Clarence shall continue to receive his undivided one-half until he shall have attained his majority; third, the trust shall terminate in the event of the death of both Clarence and Freeda before either of them shall have attained the age of majority. These are all of the provisions creating the trust, defining the trust, continuing the trust, and terminating the trust. The intention is as clear as words can make it that the trust is for the benefit of these two minors only. The intention is also clear that the trust shall terminate absolutely as to the share of Freeda upon her death, since, with that contingency in his mind and under consideration, the testator did not provide

for the survival of the trust as to her share upon her death, but provided for the continuance of the trust only as to the share of. Clarence and made no provision whatever as to the disposition of her one-half of the income on the happening of that contingency, except the provision found in the third clause of the will which gives all of the estate in undivided halves, subject only to the trusts "provided for," to Fred M. Schneider and Ellen Stull. On the death of Freeda, but one trust was provided for. That trust was the trust in favor of Clarence, and the devise to Fred M. Schneider and Ellen Stull in the third clause of the will in its entirety was expressly subject to that trust to the same extent as it would have been to both trusts had Freeda survived, since it is so subjected by the same words. No ambiguity can be found either in the third clause or the fifth clause of the will, whether taken separately or in conjunction. Nor can we find any ambiguity in them or either of them when applied to the subject-matter. The third clause applies to the whole estate except as limited by the fifth clause. The fifth clause applies to the whole income except as limited by the death of Freeda. Neither is there any ambiguity when the terms of these two clauses are applied to the beneficiaries. All beneficiaries are named *by name*. What each shall receive is expressed *in terms*. Freeda shall receive one-half of the income until she attains her majority or sooner dies. Clarence shall receive one-half of the income until Freeda attains her majority, or, if she die before that time, then only until his own majority. Of the whole estate, Fred M. Schneider and Ellen Stull shall each receive an undivided one-half, subject to both trusts. If it were not for the relationship of all of the beneficiaries to the testator, a claim of ambiguity or that anything whatever was left by the will to implication would be palpably absurd. The intention of the testator is expressed in terms on every contingency.

The respondent seeks to raise an ambiguity and to create an inference contrary to the express terms of the will from

the bare circumstance of the relation of the beneficiaries to the testator and to each other. It is argued that, by the death of Freeda, her father, Fred M. Schneider, took her share of the income, either (1) as survivor of one of two classes into which the testator had divided the objects of his bounty, or (2) as Freeda's representative.

The first claim is answered by the simple fact that the testator did not divide the objects of his bounty into classes. Every gift made by the will was expressly to an individual *by name*. As held in *Bill v. Payne*, 62 Conn. 140, 25 Atl. 354, the legatees being named as individuals and standing in different relations to the testator could not be regarded as taking as a class. The intention to create separate classes was not only not expressed, but was negatived by the failure to provide for any survivorship to any one of any bequest on the death of any beneficiary. With the contingency of Freeda's death presently in mind and specifically under consideration, the testator made no provision that the bequest to her should survive her death. In the recent case of *Peck v. Peck*, *supra*, the question here involved, and on a state of facts fully as indicative of the creation of classes as those found here, was discussed and resolved, on a careful review of the authorities, contrary to the respondent's contention here. In that case we said:

"Courts will not permit themselves to be enslaved by mere technical rules of construction, but there are certain broad canons of interpretation which have become so thoroughly established by judicial announcement that they may be said to have passed into the body of substantive, or at least definitive, law upon the subject, which the courts will not capriciously disregard.

"As defining a gift to a class, no rule has been more frequently announced, nor more universally adhered to than the following:

" 'In legal contemplation, a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions,

the share of each being dependent for its amount upon the ultimate number.' *In re Kimberley's Estate*, 150 N. Y. 90, 44 N. E. 945.

" 'A number of persons are popularly said to form a class when they can be designated by some general name, as 'children,' 'grandchildren,' 'nephews;' but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.' 1 Jarman, Wills (6th ed., Bigelow), p. 262.

"This rule is announced *in haec verba* as a determinative principle in each of the following decisions, in which the exact question here involved was presented and decided adversely to the contention of the appellants here: *In re Murphy's Estate*, 157 Cal. 63, 106 Pac. 230, 137 Am. St. 110; *In re Russell*, 168 N. Y. 169, 61 N. E. 166; *Herzog v. Title Guarantee & Trust Co., supra; Dulaney v. Middleton*, 72 Md. 67, 19 Atl. 146. See, also, 30 Am. & Eng. Ency. Law (2d ed.), p. 718; 40 Cyc. 1473."

And again, we said:

"There is another general rule of construction which, under different forms of expression, has met an almost universal approval by the courts.

" 'Where there is a gift to a number of persons who are indicated by name, and also further described by reference to the class to which they belong, the gift is held *prima facie* to be a distributive gift and not a gift to a class.' Page, Wills, § 543.

"See also, *In re Hittell's Estate*, 141 Cal. 432, 75 Pac. 53; *Kent v. Kent*, 106 Va. 199, 55 S. E. 564; *Moffett v. Elmendorf*, 152 N. Y. 475, 46 N. E. 845, 57 Am. St. 529; *Frost v. Courtis*, 167 Mass. 251, 45 N. E. 687; *Dildine v. Dildine*, 32 N. J. Eq. 78, 80; *In re Russell*, and *In re Murphy's Estate, supra;* Rood, Wills, p. 317, § 479; Remsen, Wills, p. 93; 30 Am. & Eng. Ency. Law (2d ed.), 718."

Applying these rules to the third and fifth clauses of the will above quoted, it is evident that the gifts were not to classes collectively, but were distributive gifts to the individuals named. The number of persons was certain at the time of the gift, and the share which each was to take was definite and in no way dependent for its amount upon the number which might survive. Each beneficiary was named. The further description by reference to the relation of the several beneficiaries to the testator did not change the fact that the designation by name constituted each gift a distributive gift and not a gift to a class. The testator simply indicated his son, his daughter, his grandson and his granddaughter, each by name, as his devisees and legatees of definite gifts, indicating, incidentally, their relation to himself. The mention of the relationship cannot be held to overcome the express individuality of the gift. *Peck v. Peck, supra; Bill v. Payne, supra.*

The authorities cited by the respondent are not pertinent. In *Dove v. Johnson,* 141 Mass. 287, 5 N. E. 520, the gift in trust was "after taking out George's share quarterly, yearly or oftener, to all my daughters in equal shares." "And the issue of any deceased daughter shall take the mother's share." This was, of course, held a gift to the daughters as a class and a gift to the issue of any deceased daughter of her share as a sub-class. No other construction was possible. In *Hood v. Boardman,* 148 Mass. 330, 19 N. E. 379, though the three grandchildren were designated by name, there was an express provision that the income should be divided among them or go to the survivor or survivors until the youngest arrived at the age of thirty years. In the case before us, there was no provision whatever for the survivorship as to Freeda's share in case of her death. In *Anderson v. Parsons,* 4 Me. 486, the devise to two grandsons was construed as creating a common law joint tenancy and not an estate in common. The right of survivorship was accorded not because of the testator's intention, but because it was an incident of common law

joint tenancies as distinguished from tenancies in common. In *Woolston v. Beck*, 34 N. J. Eq. 74, the testator gave the income of his farm to two daughters, S. and K. for life, S. to have two-thirds of the income and K. one-third, and after the death of the daughters, the farm to their children in fee in specified portions. S. died, leaving children. It was held that K. was entitled to only one-third of the income, the remaindermen to have the other two-thirds. This case supports the appellant's position here rather than that of the respondent. Fred M. Schneider and Ellen Stull were both the remaindermen, taking the entire estate subject only to the fulfillment of the trusts. On the lapse of one of the trusts by the death of the beneficiary, that part of the income passed to both remaindermen share and share alike, and not to one to the exclusion of the other.

The claim that Fred M. Schneider took Freeda's share of the income on her death as her representative is even less tenable. It is argued that the trust could not partially terminate at Freeda's death, but this overlooks the fact that there is no provision for any continuance of the trust after Freeda's death except the provision that Clarence Stull shall continue to receive his undivided one-half of the rents, issues and profits of the real estate until he shall attain the age of majority.

It is further suggested that the will must, if possible, be given effect so as to dispose of *all* of the testator's property; that since the law favors the vesting of estates, and presumes an intention on the testator's part to die intestate as to no part of his estate, therefore, the trust for Freeda's benefit survived to her father. There is no force in this claim, since the will by its express terms, leaves the testator intestate as to nothing or upon any contingency. The third clause of the will vested the entire estate (income and principal) in Fred M. Schneider and Ellen Stull in undivided halves, share and share alike, subject only to the trusts provided for. The very terms of the third clause prevented the supposed partial intestacy

on the lapse of the bequest in trust for Freeda Schneider. We can conceive of no reason for disregarding the express provisions of the third clause of the will vesting every part of the estate in order to create a situation invoking the doctrine against intestacy. We know of no authority permitting a disregard of express terms of a will in order to make room for the implication of terms not expressed. Moreover, even the failure to provide for the disposition of a lapsed legacy will not warrant the court in implying a provision avoiding intestacy where there is nothing in the words of the will raising such an implication. As said by the supreme court of errors of Connecticut, in *Bill v. Payne, supra:*

"It frequently happens that legatees die during the lifetime of the testator. The testatrix could have provided for such a contingency by giving it to the survivors, or to other parties. She did neither. There is, therefore, some presumption that she intended that the law should settle the matter."

The further contention that Fred M. Schneider took as heir at law of his daughter, Freeda, is wholly lacking in support. The provision for the minors was a bequest, not a devise. *McCullough v. Lauman, supra.* It was a provision for an income to each beneficiary of the trust to be paid from the whole income of the estate during his or her life, *and* minority. In such a case, no freehold passes to the beneficiary or annuitant; no interest in the land from which the income is derived; no estate of inheritance in anything. *De Haven v. Sherman,* 131 Ill. 115, 22 N. E. 711, 6 L. R. A. 745.

In *Stanwood v. Stanwood,* 179 Mass. 223, 60 N. E. 584, which is typical of the authorities cited by the respondent in this connection, the will created a fund to be held in trust expressly to continue for the term of twenty years, the trustee to pay the income to the named children of the testatrix, "and at the termination of said twenty years to divide the property, real and personal, held by the trustee . . . equally among my said children and their respective heirs

and assigns." It was held that the children took not as a class with the right of survivorship, but a vested interest as tenants-in-common. The distinction from the case here lies in the fact that the trust was for twenty years and was for the benefit of the children "and their respective heirs and assigns." Comment is unnecessary. In nearly every case cited by the respondent, the declaration of trust contained words of inheritance.

In any view of the case, the will, by its express terms, gave to Fred M. Schneider and Ellen Stull, in undivided halves, all of the income or any part of it not used in the fulfillment of the trusts provided for, whether by reason of the partial or entire lapse of these trusts by reason of the death of either or both of the beneficiaries of the trusts. Any other construction would be to rewrite, rather than construe, the will.

(b) Can the administratrix *de bonis non* maintain this action? If she cannot the action must be dismissed. She sued only in that capacity. The question is a new one in this state and requires consideration at some length. It is squarely presented and must be met. Under the rule at common law, she could not, since at common law the administrator *de bonis non* was only entitled to recover from the personal representatives of a deceased former administrator or executor property remaining in specie, i. e., in the form in which it existed at the death of the deceased, and capable of identification as the property of the first deceased. *Reed v. Hume*, 25 Utah 248, 70 Pac. 998; *Parker v. Stevens*, 61 N. J. Eq. 163, 47 Atl. 573;

. Originally the right to administer was a prerogative of the crown. This right was afterwards transferred to the church and exercised through the prelates. The prelates were accountable only to God and their own consciences. They could, at will, devote the goods of an intestate to pious uses. When, by reason of prelatical abuses, the right to administer was, by statute, transferred to the next of kin of

the deceased, the administration was still conducted according to ecclesiastical rules. The administrator was vested with title to the goods, subject to payment of debts of the deceased. He had, however, no right to dispose of such goods by will, since he held the title in right of the estate. Any part remaining in specie at his death was still the property of the estate of the deceased. Such property was, therefore, subject to administration by the succeeding administrator or executor *de bonis non* with will annexed. If the first administrator or executor wasted, lost, altered or converted the goods of the estate, such goods were considered as "administered," and no longer a part of the estate. The first administrator's accountability therefor was then a mere chose in action in favor of the creditors, legatees or distributees of the estate, who alone could sue to enforce it. The administrator or executor *de bonis non,* being entitled to the possession, for the purpose of administration, only of goods remaining in specie, could only sue for the recovery of goods so remaining. *State v. Rottaken,* 34 Ark. 144.

We have adverted to the ancient basis of this doctrine merely to show its extreme technicality and its apparent lack of applicability to present day conditions. Has this rule been changed by statute in this state? The sections of our statute which we deem directly pertinent are as follows, the citations being to section number of Rem. & Bal. Code:

"§ 1430. If any executor or administrator resign, or his letters be revoked, or he die, he or his representatives shall account for, pay, and deliver to his successor, or to the surviving or remaining executor or administrator, all money and property of every kind, and all rights, credits, deeds, evidences of debt, and papers of every kind of the deceased, at such time and in such manner as the court shall order on final settlement with such executor or administrator, or his legal representatives."

"§ 1431. The succeeding administrator, or remaining executor or administrator, may proceed by law against any delinquent former executor or administrator, or his personal

representatives, or the sureties of either, or against any other person possessed of any part of the estate."

"§ 1538. Any administrator may, in his own name, for the use and benefit of all parties interested in the estate, maintain actions on the bond of an executor or of any former administrator of the same estate."

In *State v. Rottaken, supra,* chiefly relied upon by the respondent as construing statutes (Gautt's Digest, §§ 44, 45) very like our §§ 1430 and 1431, above quoted, the supreme court of Arkansas held that an administrator *de bonis non* could not maintain an action against a former administrator or executor of the same estate for waste or conversion, that the statute did not supersede the common law rule and that the action could only be maintained by the creditors, legatees or distributees. This, however, as shown by the opinion, was largely because another section of the statutes of that state (Gautt's Digest, § 191) authorized only "a legatee, distributee, creditor, or other person interested" to sue in the name of the estate on the bond of any executor or administrator for mismanagement, waste, or other breach of the conditions of such bond. In this state we have no such statute. On the contrary, our statute, § 1538, above quoted, expressly authorizes *any administrator to sue in his own name* for the benefit of all parties interested in the estate on the bond of an executor or of any former administrator of the same estate. This section authorizes such an action for any breach of the bond, and conversion is clearly such a breach. *Palmer v. Pollock,* 26 Minn. 433, 4 N. W. 1113. It would be most incongruous to permit an action against the bondsman which could not be maintained by the same plaintiff against his principal or against his principal's estate. The obvious purpose of the statute is to avoid a multiplicity of suits, since there might be many heirs or legatees, but it is general in its terms, and must be held to apply in all cases. In view of this positive and unequivocal statutory authority of a second administrator to sue, for the benefit of *all persons*

*interested,* upon the bond of the former administrator of the same estate, we are constrained to hold that § 1431 was intended to authorize a suit of the same character and for the benefit of the same persons by the administrator *de bonis non* against the former administrator or executor personally or against the administrator or executor of his estate.

The supreme court of Georgia has construed a statute of that state, in essential particulars the same as Rem. & Bal. Code, § 1430, above quoted, as giving to the administrator *de bonis non* the right to sue the administrator of a former executor of the same estate to compel an accounting for the proceeds of property of the estate sold by the deceased administrator, and converted into cash. *Knight v. Lasseter,* 16 Ga. 151. Moreover, authority is not wanting that moneys coming into the hands of the first administrator as proceeds of the estate, though not assets received in specie, are still assets in such form as to be traced and, therefore, as between such first administrator and the administrator *de bonis non,* belong to the latter and may be recovered at his suit. *Marvel v. Babbitt,* 143 Mass. 226, 9 N. E. 566; *Balch v. Hooper,* 32 Minn. 158, 20 N. W. 124. We have examined all authorities cited by respondent, but shall not review them, since it is admitted that the Arkansas decision above reviewed is more nearly applicable to our statute than any of the other decisions cited.

We do not hold that creditors, legatees, or distributees may not maintain such actions in their own names as they could at common law. That question is not before us. After distribution of the estate, of course, they alone can sue. *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765.

There is no merit in the plea of *res judicata.* The court, in probate, never passed upon Ellen Denton's objections to the appropriation of this money by the former executor. Nor do we find any merit in the claim of estoppel. Ellen Denton was justified in not charging herself as administratrix *de bonis non* with this claim so long as the money was withheld

and the will was unconstrued. To work an estoppel, her conduct touching this claim must have been such as to redound to her own benefit or to the injury of the respondent. It had neither result. *Peck v. Peck, supra.*

Though we hold that the appellant may maintain this action, it does not follow that she may recover the full sum of $2,500. It was admitted in argument that all debts of the estate have been paid. Fred M. Schneider had the right to one-half of this sum. His estate will not be required to repay it merely to subject it to the cost of re-administration.

The judgment is reversed, and the cause is remanded with directions to enter judgment in favor of the appellant for $1,250, with interest from the date of the presentation of her claim to the respondent and for costs.

CROW, C. J., MAIN, and GOSE, JJ., concur.

CHADWICK, J. (concurring)—As to the second proposition discussed by Judge Ellis, while it may be that the common law rule has been enlarged by our statute, it was unnecessary to discuss the question at length or to so hold in this case. The estate had been fully administered. The remedy should have been by a straight action at law. A resort to the circuitous method pursued in the case at bar, with the attendant expense of an unnecessary administration *de bonis non* tending to the diminution of the estate, should not be encouraged. It would have been better to hold to this doctrine, and to have reserved our discussion of the right of an administrator *de bonis non* to sue, until a case involving that question was really before us. The conclusion of the majority is in harmony with my views; for, after all, the court comes down to the very simple proposition—and it is the only thing involved in this case outside of the construction of the will—and directs that a judgment be entered for a one-half of the income, with interests and costs. I understand that the costs of the unnecessary administration will eventually be put upon plaintiff, and for that reason I concur in the result announced by the majority.