[No. 16630.    Department Two.    January 9, 1922.]

THETFORD PICKARD, *Appellant,* v. JOHN E. WEBB *et al.,*
*Respondents.*[1]

GUARDIAN AND WARD (20)—ACCOUNTING—ORDER OF COURT—NECES-
SITY.  A settlement between a guardian and ward after the latter
attains his majority, made without an order of court, amounts to a
legal discharge of the guardian, when made without fraud or abuse
of the guardian's position of influence over the ward.

SAME (24) — ACCOUNTING—FRAUD—EVIDENCE—SUFFICIENCY.  The
burden of showing perfect good faith incumbent on a guardian in
dealing with a ward is sustained by evidence showing a full, fair and
complete understanding of the ward at the time of a settlement be-
tween them after the ward had attained his majority.

SAME (24).  Where a ward, at the time of an accounting and set-
tlement between him and his guardian, has knowledge of facts
sufficient to put him on inquiry as to his rights, his delay of eight
years in commencing suit to set aside the settlement constitutes such
laches as to give him no standing in a court of equity.

Appeal from a judgment of the superior court for
Walla Walla county, Blake, J., entered February 19,
1920, in favor of the defendants, dismissing an action
for equitable relief, tried to the court.  Affirmed.

*Richards & Richards* and *George H. Bishop,* for ap-
pellant.

*Sharpstein, Smith & Sharpstein,* for respondents.

MACKINTOSH, J.—The appellant is the son of the re-
spondent Anna Webb.  His father died in 1902, and she
was appointed administratrix of his estate, which was
closed in 1904, at which time she was appointed guard-
ian of the appellant's estate, he then being a minor of
the age of fourteen years.  The mother married the re-
spondent John E. Webb, and together they managed
the estate of the ward.  In 1911, a few days after the

[1]Reported in 203 Pac. 51.

appellant became of age, his mother procured a release from him of all his interest in the guardianship estate, and took from him a warranty deed therefor. The guardianship estate has never been closed by the court. When the appellant was nineteen years of age he married. The respondents at that time gave him a home and the surrounding lands, which was taken as an advancement on his interest in the guardianship estate.

The accounts filed in the guardianship estate were very irregular, the last one prior to 1913 being for the year 1909. In 1919, a sister of the appellant began suit against her mother, as her guardian, requiring an accounting and settlement of the estate. In that action the respondents were required to file an accounting, which was introduced in evidence, and it was upon the trial of that case that the appellant here alleges he first discovered that the respondents claimed to have settled with him in full, and that they had concealed and secreted a part of the assets of the estate.

The trial court found against the appellant, who is seeking to have the warranty deed made by him to the respondent cancelled, and to have the guardianship estate settled.

It is the contention of the appellant that a guardian must file his final account and pay over the money and goods in his possession upon order of the court, and not otherwise. But, as we view it, a guardian, after the ward has arrived at maturity, may make a settlement of the estate without procuring an order of the court, so long as that settlement is made without fraud or abuse of the guardian's position of influence over the ward, which will amount to a legal discharge of the guardian without the court's order. *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765. It, therefore, becomes

necessary to discover whether the settlement between the appellant and his mother is free from fraud.

The rule which we have heretofore announced in *Hemrich v. Hemrich,* 117 Wash. 124, 201 Pac. 10, is applicable to this case. The burden is upon the guardian to show the degree of good faith that was there laid down as being necessary in dealings between persons sustaining to each other the fiduciary relationship that here existed. Many details are alleged and sought to be proved by the appellant in connection with the management of this estate which, according to his contention, support his accusation of fraudulent conduct. It was claimed that a lease to state school lands which belonged to the estate had been concealed from him, as also had a lease from the Northern Pacific Railway Company; also, that he was unaware of the existence of a warehouse upon the property; that the accounts had been surcharged in the amount of $1,120, and that the accounts for the years 1908 and 1909 contained discrepancies; that the plow land had been surcharged; that crops raised on the estate had not been accounted for; that there were certain lands owned by the estate which had never been disclosed; that certain lands had been cropped and never reported; and that there was money due the estate outstanding which had never been accounted for.

It is his contention that all these things were unknown to him until they were disclosed pending the litigation between his sister and mother. All of these facts depend upon disputed evidence, and although we recognize the burden was upon the guardian to show that she had fully complied with the rigid rules of law exacting from her perfect good faith in dealing with her ward, we cannot help but be impressed, as was the trial court, with the fact that the evidence in this case meets the law's requirements, and that it is

impossible to say that a full, fair and complete understanding was not had by the appellant at the time he made the settlement with his guardian. We have not here the case of a boy who was entirely inexperienced, and who was not familiar with the entire situation surrounding the property. At nineteen he was married and set up an estate of his own. He had always lived upon, or very near, the property constituting the guardianship estate; he was familiar with the way it was being handled; he knew its extent, its productivity and its probable income, and we are thoroughly persuaded that, at the time of the settlement, he was not overreached. More than that, for eight years thereafter he continued satisfied with the settlement, and although the record shows that he had been unsuccessful in his own ventures, there is no suggestion or complaint from him that would indicate that he had any suspicion he had been dealt with other than fairly. Of course, he claims it was not until 1919 that he discovered what he now says are discrepancies in the accounts, and that he then first learned that he had deeded his interest in the estate away. This is really incomprehensible. As we have said, he was in a position where he could have observed what was taking place; his conveyance was a matter of record; the whole situation was before him if he had only looked, and it must be that his conduct, in face of the possibilities of discovering the delinquencies, if any there were, has been such that the courts will not at this time be open to him. Although he is not bound by the limitation of any statute, still the period of his inactivity has been so long that it must be said he has been guilty of laches.

The trial court, who painstakingly heard and passed upon this case, summarized succinctly and correctly the situation in a memorandum decision:

"The substance of these charges of fraud are:

"1st. He was induced by defendants to sign the deed and release without reading them; that he did not know the contents of them; that he did not intend to make a settlement and would not have signed the papers if he had known that he was relinquishing his interest in the estate.

"2nd. That a full disclosure was not made by the guardian as to the assets of the estate at the time plaintiff became of age.

"The alleged fraudulent representations first above referred to have not been substantiated by any credible testimony. On the contrary, it is demonstrated by the overwhelming preponderance of the evidence that he not only knew what he was signing at the time he executed the release, but that he intended to release his mother from her trust and intended to deed his interest in the estate to the defendants. It is not necessary to review the evidence in detail on this subject. It will suffice to say that plaintiff in the years intervening between 1911 and 1919 has said to different persons and on different occasions that he had no further interest in the estate, or that he had settled with his mother—and statements of like import.

"So the action must fail unless the alleged failure of the guardian to make a full disclosure of the assets of the estate and of her receipts and disbursements in the execution of her trust, render the transaction voidable. It is doubtless the law that where a guardian settles with a ward without making a full and fair disclosure of his acts as such, the settlement is voidable at the option of the ward after attaining his majority. But the right of that ward is not everlasting. He must act within a reasonable time after coming of age or else he will be held to have lost his action by reason of laches. What is a reasonable time is ordinarily the period of the statute of limitations in actions of fraud. Measured by that yard stick, the plaintiff's cause would have been barred in April, 1914.

"But plaintiff claims that he did not know until 1919 that a full disclosure had not been made by the guardian. But he cannot be heard to say so, for he is

chargeable with knowledge as of the time that he was in possession of facts which would put him upon inquiry as to the fairness of the settlement. And in this case such facts existed and were within the knowledge of plaintiff in April, 1911.

"There are two such facts, much urged on the argument, of which the plaintiff must have known or, at any rate, with notice of which he is chargeable. He knew of the purchase of the ward's interest in certain estate lands for $30 per acre in 1911. He claims he was defrauded in this respect because he alleges the land was at that time worth $35 per acre. Again, he claims that in 1911 his interest in the capital assets of the estate was worth $15,000 or $16,000, and that in fact all that he ever received from the estate was $8,000 or $9,000. These facts were as patent in 1911 as in 1919.

"Again he charges that certain leaseholds were not made known to him. He had the knowledge or means of knowledge at hand in 1911 with respect to these as well as in 1919. The Northern Pacific right-of-way and the school lands were farmed for many years prior and subsequent to 1911 in connection with the estate lands.

"I conclude that with the knowledge of these facts he was chargeable with such knowledge as should have put him to an inquiry as to his rights in 1911. Failing to commence his action until 1919, he is guilty of laches and has not standing in a court of equity."

This decision meets with our acquiescence. The judgment is affirmed.

FULLERTON, MAIN, HOLCOMB, and HOVEY, JJ., concur.